———o———

EUSTACE F. GOLSON, *et al.*, Appellants, *vs.* ELLIS B. EBERT, Respondent.

1. *Agent—Statments, when made—Principal, liability of.*—Statements of agents do not bind their principals, unless made at the time of the transaction so as to form part of it.
2. *Evidence—Prices current—Secondary evidence.*—A price current of the prices in a city is only secondary evidence, and not the best evidence obtainable.
3. *Contracts—Made in one country, and ratified in another—What law controls.*— If a contract is made in one State and to be fulfilled there subject to ratification by a party in another State, when ratified the contract is to be interpreted by the laws of the first State.

*Appeal from St. Louis Circuit Court.*

*Moss and Sherzer*, for Appellants.

I. In cases of general agency, a principal is bound, though the agent disobeys his instructions in making a contract within the scope of his employment. (Story on Agency, §§ 126, 127; Butler vs. Maples, 9 Wal., 766; Pickering vs. Busk, 15 East, 37; Gilman vs. Robinson, 1 Ry. & Mod., 226; Winter vs. Pacific R. R. Co., 41 Mo., 503.)

. II. Plaintiff's Instruction, No. 5, directed the attention of the jury to the testimony introduced in evidence, in determining whether or not such general agency existed, and should have been given. (McDevitt vs. Pacific R. R. Co., 50 Mo., 302; Fitzgerald vs. Hayward, 50 Mo., 516; Sawyer vs. Han. & St. J. R. R. Co., 37 Mo., 240; Clark vs. Hammerle, 27 Mo., 55.)

III. Instructions, Nos. 1 and 2, given by the court, are errone ous. 1st, In that they neglect, and fail to present the vital distinction between an agent vested with general, and one with limited authority in binding the principal, whose instructions he may have disobeyed or transcended. 2nd, In that they leave the question of agency to be solved by inference and conjecture. 3rd, In that they had a direct tendency to mislead the jury and left them to all the latitude of inference. 4th, In that they were too general and abstract, and might mislead the jury. 5th, In that, taking the two instructions together, it would seem that the agent must have been in fact authorized to make said contract. (McDermott vs. Donegan, 44 Mo., 85; Mead vs. Brotherton, 30 Mo., 201; Chappell vs. Allen, 38 Mo., 213.)

IV. Defendant's Instruction No. 2 was wrong, in that it fails to distinguish between the obligations of principal, flowing from a general agency, when instructions are disobeyed, and was calculated to mislead. (Chappell vs. Allen, 38 Mo., 213, 221–2; Fitzgerald vs. Hayward, 50 Mo., 516, 523.)

V. Defendant's 3rd Instruction is the law, even in respect to orders. (Biggs vs. Lawrence, 3 Term R., 454, 456, Territt vs. Bartlett, 21 Vt., 184, 187, 191; Backman vs. Wright, 27 Vt. 187, 189; Backman vs. Mussey, 31 Vt., 547, 551; Albion Co. vs. Mills, 3 Wil. & Shaw, 218–233.)

VI. The law where the contract is to be performed, governs as to its validity. (Story on Conflict Laws, p. 432, §§ 280, 242, p. 367 § 242 ; Andrews vs. Pond, 13 Peters, U.S., 65–78 ; Penobscot & Ken. R. R. vs. Bartlett, 12 Gray, 244–248 ; Hall vs. Costello, 48 N. H., 176–179 ; Ruse vs. Mutual Benefit Life Ins. Co., 23 N. Y., 516–521.)

The approval of the contract being its ratification, it was even in its making a Louisiana contract, and its validity to be determined by her laws. (Story on Conflict of Laws, § 286 ; Story on Conflict Laws, § 244, p. 288.)

VII. Testimony tending to discredit plaintiff's financial standing, was wholly irrelevant. (Eddy vs. Baldwin, 32 M., 369–374 ; Blair vs. Corby, 29 Mo., 480–486.)

*Noble & Hunter*, for Respondent.

The question is what power a third person dealing with an agent, had a right to infer from the conduct of the principal that the agent possessed. (Johnson vs. Jones, 4 Barb. Sup. Crt., 399–373 ; 1 Am. L. Caus. p. 550.)

VORIES, Judge, delivered the opinion of the court.

Plaintiffs charge that they were partners doing business in New Orleans, Louisiana, in the name of F. Golson & Co., that defendant and one Spotswood were doing business in St. Louis under the name of E. B. Ebert & Co., that on or about the 26th of April, 1870, in said city of New Orleans, said Ebert & Co., by their authorized agent contracted and agreed with plaintiffs to furnish them, 300 rolls and 50 half rolls (Douglass bagging,) at the price of 24 1-2 cents per pound, to weigh 2 1-8 lbs. to the yard, and to be as good in every respect as a sample there exhibited by said agent, and to be delivered to plaintiffs in said city of New Orleans on the 15th day of July, 1870, which plaintiffs agreed to pay for on delivery, by the acceptances of plaintiffs, payable four months after date. That before the time for the delivery of the bagging by the terms of the contract, the price of bagging advanced rapidly. That defendant failed and refused to deliver the bagging, although requested thereto, and the pay therefor was tendered as per contract, for which failure damages are claimed, &c.

The defendant, by his answer, denies the making of the contract charged, by their duly authorized agent, for said quantity of bagging, or for any bagging, or for any price or upon any terms whatever, and denies every material allegation in the petition, except he does not deny that he was requested to, but refused to perform the contract.

A trial was had before a jury, and there the plaintiffs read in evidence the deposition of E. F. Golson, (one of the plaintiffs,) by which the contract as stated in the petition, was fully proved. It was also testified to in said deposition, that Stringfellow, with whom the contract was made, was the agent of defendant, that witness knew he was the agent by having dealt with him before, and that in said dealings defendants had recognized him as such, and acted upon and performed the contracts of Stringfellow as such agent. It was also stated in said deposition, that upon defendant's business cards Stringfellow's name appeared as an agent. This evidence in the deposition in reference to the card was stricken from the deposition by the court, as being incompetent and irrelevant, and plaintiff excepted. Said deposition also showed, that long after the contract made with said Stringfellow, the said Stringfellow still professed to be the agent of defendant to sell bagging, and offered to sell plaintiffs more bagging, but at an advanced price. That he was acting as agent of defendants in Texas and other Southern States, and at New Orleans, &c. The said deposition also contained a statement, that the witness, some months after the contract was made, had a conversation with said Stringfellow, in which he stated that " he had notified defendant of the contract made with plaintiffs, and that defendant's firm would " come to time." This was also stricken out as being irrelevant and incompetent, and the plaintiffs excepted. It was also stated in said deposition, that about a month after the making of the contract sued on, plaintiffs wrote a letter to said Ebert & Co., in which plaintiffs expressed the hope that defendants would find it convenient to deliver at least a part of the bagging prior to the 15th of July, 1870. That in reply Ebert, & Co., stated " that on the terms of

your order as to price, &c., they could not fill," and quoted the price of bagging in the west, but in said letter, plaintiffs were not informed, whether said Ebert, & Co., were or were not dealers in bagging. This part of said deposition was also stricken out by the court, on the ground that it was also irrelevant and incompetent. The plaintiffs' again excepted.

The plaintiffs also introduced the deposition of one Chism, by which the price of bagging was proved in July, 1870, and with which deposition there was an exhibit filed, proved by said deposition to be a price current issued at New Orleans at said time. This price current was rejected as evidence by the court, as being incompetent and irrelevant, and the plaintiff again excepted.

The deposition of William F. Tutt was read, by which it was proved that he was dealing in bagging in the city of New Orleans in July, 1870—that 30 cents was the wholesale and 32 cents the retail or jobbing price of bagging in the New Orleans market at that time, that witness' knowledge of prices is derived from actual sales; that he did not at all times regard the price current of New Orleans as the authority for prices of bagging. The deposition of one Micaw was also introduced, which proved that the deponent was present in New Orleans at plaintiffs' office, and heard plaintiffs demand of Stringfellow, the supposed agent, the bagging named in the contract, that Stringfellow replied that he did not have the bagging, and walked out of the office.

The deposition of E. G. Crews was introduced, in which it was stated that he was a merchant, belonged to the firm E. G Crews & Son, was in general grocery business at Montgomery, Alabama, had the first transaction with Ebert & Co., of St. Louis, through W.R. Stringfellow who represented himself as agent selling goods for Ebert & Co.,—bought a car load of bran from Stringfellow on thirty days' time, in Nov., 1869.— Stringfellow first introduced deponent to a business relation with Ebert & Co. Said contract was final and unconditional; and was not subject to the approval of Ebert & Co. Said Ebert & Co. complied with said contract by shipping the bran

bought. Stringfellow held himself out as the general agent for Ebert & Co. to sell goods. That the usage of trade amongst merchants is to sell and purchase bagging and manufactured articles at from two to four months' time. It was also proved, that prior to the making of the contract sued on, plaintiffs had bought corn of defendants through their agent, Stringfellow, and that the contract was filled by Ebert & Co. without question, and that said Stringfellow had, before and about that time, been in the habit of making sales of provisions and other commodities at New Orleans and other places in the south, and that the orders so taken and contracted for, were filled and performed by defendants without objection; that the purchase of the bagging was made unconditionally, without any reference to its being approved by the defendants or any other person.

The depositions of several witnesses were read, which tended to prove that said Stringfellow was the recognized agent of Ebert & Co., sold large quantities of goods at Jefferson, Texas, to divers persons, consisting of bagging, flour, bacon and other commodities; that some of the sales made by Stringfellow, as the agent of defendants, were on credit, and that they were all for absolute unconditional sales of the goods, and were all recognized and performed and settled by Ebert & Co.; that Stringfellow was the generally recognized agent of defendants. That these transactions were had through the months of March and April of 1870, and through the fore part of that year.

The plaintiffs then read in evidence from the Code of Louisiana as follows: "All agreements relative to personal property and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements above five hundred dollars in value must be proved at least by one credible witness and other corroborating circumstances."

The defendants then read the deposition of W. R. Stringfellow, by which the evidence of plaintiffs, in reference to the

contract sued on was contradicted ; he stated that he made no contract of the kind, that plaintiffs proposed purchasing the bagging named, that he took a memorandum of the proposition, told plaintiffs he would send it to Ebert, who could see if the manufacturer would fill the order. That witness was the agent of Ebert & Co., to take orders for goods, but that said orders had always to be sent to them for their approval ; that sometimes he had fixed the price of commodities when he was posted and authorized by Ebert & Co. to do so. That at the time the talk was had with plaintiffs about the bagging, he told them that Ebert and Co. had no interest in the bagging, that the proposition would have to be submitted to the manufacturer, as all that Ebert had to do with it was, that he got 2 1-2 per cent. for selling. Witness stated that he took orders for Ebert & Co. on commission. Witness was asked as to the standing commercially of plaintiffs, whether good or bad, and answered that it was not good. The plaintiffs objected to this question and answer being read in evidence, on the ground that it was incompetent and irrelevant; their objection was overruled, and they excepted. The defendant was examined himself, together with several other witnesses, whose evidence tended to show that said Stringfellow was only the agent of defendant to solicit orders, without authority to make contracts; but that when orders were given him he sent them to Ebert & Co. for their approval, and that the purchase made by plaintiffs, of which they testified, was an order sent by Stringfellow, which defendant modified and plaintiffs accepted the modification ; that defendant and his partner had nothing to do with bagging, except when Stringfellow would get an order for bagging they would send it to defendant, who would try to fill it, —that Douglass the manufacturer of the bagging sent the samples to Stringfellow, &c.

The court at the request of the plaintiffs instructed the jury as follows:

"The court instructs the jury, that if they believe from the evidence that the contract sued on was made in and to be performed in the State of Louisiana, then the law of that State

must govern in determining the validity of said contract, and that by the laws of said State, to make such contract valid it need not be reduced to writing."

The court on its own account gave the jury the following instructions:

"If the jury believe from the evidence that the defendant employed one Stringfellow as their business agent, and sent him out and accredited him as their agent, then they are bound by the acts and contracts of said Stringfellow, made within the scope of the credit and authority thus given him, and if the conduct of the defendants themselves with regard to the agency of said Stringfellow was such that plaintiffs could fairly infer that said Stringfellow had authority to make the contract in plaintiffs' petition alleged, and if the jury believe from the evidence that said Stringfellow did in fact make said contract with plaintiffs, then the same is binding on the defendants."

2nd. "The jury are instructed, that they cannot find for the plaintiffs, unless they believe from the evidence, that the said Stringfellow was in fact authorized by defendants to make such contract of sale as that in plaintiffs' petition alleged, or that the conduct of the defendants themselves in regard to the agency of said Stringfellow was such, that the plaintiffs had a right fairly to infer that he was so authorized; and the burden is on the plaintiffs to satisfy the jury of the facts contemplated by this instruction and by the preponderance and weight of the evidence."

3rd. "If the contract for the sale of the bagging was made by Stringfellow, and was binding on defendants, and if defendants failed to comply with the same by delivering the bagging at the time and place named in the contract, the jury will find for the plaintiffs, and the measure of damages will be the difference between the contract price and the market price at the time and place of delivery, not exceeding the sum claimed with interest from the commencement of this action."

4th. "The court instructs the jury, that the burden is on the plaintiff to prove to the satisfaction of the jury.—

1st. The contract for the sale of the bagging was made and is binding. 2nd. The price to be paid for the same by the plaintiffs, of which the commission, freight and insurance is part,— 3rd. The time and place of delivery. 4th. The failure of the defendants to deliver the same pursuant to the terms of the contract, and 5th, The market price of the bagging at the time, and at the place, at which the same was contracted to be delivered."

To the giving of the above instructions by the court the plaintiffs objected and excepted.

The court then instructed the jury on the motion of the defendants as follows:

1st. "If the jury believe from the evidence, that the contract alleged to have been entered into between plaintiffs and one Stringfellow, as the agent of defendants, was subject to the approval of the defendants at St. Louis, then the plaintiffs are not entitled to recover in this action, and the jury must find for the defendants, unless the jury believe from the evidence that the same was approved by the defendants."

2nd. "If the jury believe from the evidence, that W. R. Stringfellow was acting for the firm of E. B. Ebert & Co., under special instructions and with limited authority, so that he was not authorized to make absolute contracts of sale on account of said house, and that the defendant did not otherwise represent him to be, to the plaintiffs or to the public generally, with the knowledge of the plaintiffs, then the court instructs the jury, that the plaintiffs dealt with said Stringfellow at their own risk, and defendants were not bound by his contracts beyond his authority, unless subsequently approving the same. The jury may, however, consider the dealing of said Stringfellow with the public generally, and defendants' conduct in regard to such dealing, in determining whether said Stringfellow was acting under special instructions or had general authority to make such contracts as that in plaintiffs' petition alleged."

3rd. "If the jury believe from the evidence, that the alleged contract between plaintiffs and defendants as a member of

the firm of E. B. Ebert & Co., of St. Louis, was made at New Orleans, Louisiana, but subject to the approval of the said Ebert & Co. at St. Louis, Missouri, then the court instructs the jury, that the validity of said contract depends upon the laws of Missouri, and unless the jury find that some part of the goods were delivered to plaintiffs, or some part of the price paid by plaintiffs, or there was a written agreement made between the parties and signed by defendant, or the firm of E. B. Ebert & Co. or their agent duly authorized, and delivered to plaintiffs, then said contract was not good, and the jury must find for the defendants.

To the giving of which instructions the plaintiffs excepted.

The plaintiffs asked the court to give the jury several instructions, which were refused, and the plaintiffs excepted, but it is not necessary that they should be repeated here.

The jury returned a verdict for the defendant. A motion was made by the plaintiffs for a new trial, setting forth as grounds the opinions of the court excepted to. This motion being overruled, plaintiffs again excepted. After final judgment had been rendered for the defendants the plaintiffs appealed to the General Term of said court, where the judgment was affirmed, and an appeal taken to this court.

The questions raised by the record in this case to be considered by this court are, as to the propriety of the action of the court that tried the cause in receiving and excluding evidence received and rejected on the trial, when the same was objected to, and as to the propriety of the action of the court in giving and in refusing instructions to the jury.

The first point raised is, that the court struck out from Golson's deposition that part in which it was stated that he knew Stringfellow to be the agent of the defendant because his name was printed as such on plaintiff's cards. This evidence was properly rejected, as no evidence was given tending to show that such card or cards were circulated with either the knowledge or consent of defendants.

The evidence as to the correspondence between the parties was also properly stricken out, as it was not shown that any

efforts had been made to procure the letters themselves, or copies thereof. The evidence in reference to what was said by Stringfellow, long after the supposed contract was made, was also properly rejected. No admissions or statements made by an agent can be given in evidence against the principal, unless the statements were made at the time of the transaction to which they refer so as to form a part of the transaction.

The price current at New Orleans offered in evidence by the plaintiffs, was also properly excluded by the court. There at least should have been satisfactory evidence, that it contained a correct statement of the prices, by one who knew the fact, in order to admit it in evidence. The price current was only secondary and not the best evidence of the material fact to be proved, which was the actual price or value of bagging on the 15th day of July, 1870, and then the price current is not set forth in the bill of exceptions, so that its materiality can be seen.

The defendant proved by the deposition of Stringfellow, the commercial standing of the plaintiffs, and that their standing was bad. This evidence was objected to by the plaintiffs on the ground, that it was incompetent and irrelevant, but the court overruled the objection, and admitted the evidence. The action of the court in this particular was erroneous: there was no issue in the case involving the commercial standing of the plaintiffs, and there was no pretense that their standing was not known to defendant and his agent at the time of making the supposed contract, so that in any view of the case, this evidence was wholly immaterial, and could only be calculated to prejudice and mislead the minds of the jury, and ought to have been rejected. (Eddy vs. Baldwin, 32 Mo., 369.)

It is true that courts will not always reverse a case merely on the ground that irrelevant evidence has been admitted that could from the nature of the case do no harm, yet whenever the evidence tends to predjudice or mislead the jury, it is good ground for reversal. (Blair vs. Corby, 29 Mo., 480.)

The next ground of objection raised in this case, is as to

the propriety of the instructions given by the court.   By the fourth instruction given to the jury by the court the jury are told, " that the burden is on the plaintiffs to prove to the satisfaction of the jury "(amongst other things) " the failure of the defendant to deliver the same, (the bagging) pursuant to the terms of the contract;" this part of instruction four was not applicable to the facts of this case.   There was no such issue before the jury; the petition charged that the bagging had been demanded and its delivery refused by the defendants. These allegations were not denied by the answer, hence the burden of proving said facts were not on the plaintiffs ; in fact, there was nothing either in the pleadings or evidence in the case which even tended to make such an issue before the jury ; the whole theory of the defendant was, that he had made no such contract; performance was not pretended, but nonperformance admitted.

The third instruction given by the court at the request of the defendant, told the jury that if the contract was made by the agent, Stringfellow, at New Orleans, in the State of Louisiana, but was made subject to the approval of the said Ebert & Co., at St. Louis, Missouri, then the validity of the contract would depend on the laws of Missouri, and that unless some part of the goods were delivered to plaintiffs, or some part of the price paid by plaintiffs, or a written agreement made between the parties, and signed by the defendant or his agent duly authorized, and delivered to the plaintiffs, the contract was not binding, &c.

This was clearly wrong.   If the agent made the contract, in New Orleans, which was beyond his authority, and it was made subject to its being ratified or approved by his principal in St. Louis, and was afterwards ratified by the principal at St. Louis, it would become binding not as a new contract made at St. Louis, but the contract would become binding as made and where made by the agent, and would have just the same effect as it would have if the agent had been fully authorized to make the contract before it was made, and no ratification was necessary.   (Story on Agency, §§ 239, 244.)

This contract was made in New Orleans, was to be performed in New Orleans, and if it was ratified by defendant it was a ratification of the contract made there and to be performed there, hence we must look to the laws of Louisiana to ascertain its validity, and the statute of frauds in Missouri cannot affect it. (Story's Conflict of Laws, § 242, and following.)

The instructions, four and five, asked for by plaintiffs, and refused by the court, ought to have been given; they contained a proper exposition of the law of agency as applicable to the facts of this case. The instructions given by the court however, contained the same principles of law, as those asked by the plaintiff and refused, and although they do not so well present the law applicable to the particular facts in the case, yet they would not be likely to mislead the jury, so that if there were no other errors committed than the refusal of the court to give the said instructions asked for by the plaintiffs, that of itself might not be deemed sufficient to reverse the judgment.

For the errors aforesaid, the other Judges concurring, the judgment is reversed, and the cause remanded. Judge Wagner absent.