Seligman v. Rogers.

---

SELIGMAN et al., Appellants, v. ROGERS, Executrix.

Division Two, January 31, 1893.

1. **Evidence**: BOOK ACCOUNTS: HARMLESS ERROR. Though an account book of original entries shown to have been kept in the usual course of business is competent evidence in favor of the person by whom it is kept, error cannot be founded on the exclusion of such account book where there was other sufficient and better evidence to establish the facts shown by the book.

2. ———: GENERAL OBJECTION. Where evidence offered is admissible for any purpose, a general objection to it is insufficient.

3. ———: MONEY ADVANCED FOR PURCHASE OF STOCK: SOLVENCY OF PROMISOR. Where, in an action against the estate of a decedent for money advanced for the purchase price of stock, it does not appear that the deceased had ever signed a note or memorandum of purchase or that the stock was ever delivered to him or that any demand was ever made upon him for the purchase price during the four years

Seligman v. Rogers.

plaintiffs claimed they "carried" the stock, it is competent for the defendant to show that during this period deceased was solvent and had a large bank account, these being circumstances which the jury may consider in determining whether or not there was a loan.

4. ———: ———: MARKET VALUE. Evidence is also admissible as to the market value of the stock during the period referred to.

5. ———: ———: PRICE CURRENT. A price current of prices of stock is competent evidence. (*Golson v. Ebert*, 52 Mo. 260; *criticised.*)

6. ———: ———: DEMAND. It was competent to permit a witness, a son of the deceased, to testify that it was his father's habit to keep a copy of all letters received, and that in an examination by the witness of these letters nothing could be found relating to the alleged purchase of stock as circumstances tending to show that no demand was ever made on the decedent.

7. Contract: ABANDONMENT: INSTRUCTION. It not appearing that the stock was ever delivered to the deceased or that any demand was ever made on him for the purchase price, an instruction was not erroneous which told the jury that they might find for the defendant if they believed that plaintiffs had abandoned and canceled the agreement by which deceased was to take the stock.

8. Practice: WITNESS SWEARING WILFULLY FALSELY: INSTRUCTION. Where the evidence is conflicting the court may instruct the jury, that, if they believed that any witness had wilfully sworn falsely to any material fact, they may disregard his entire testimony.

ON REHEARING.

9. Pleading: PROBATE COURT: DEMAND. A demand against the estate of a decedent should state sufficient facts to give notice of the claim sought to be established.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*E. W. Banister* and *John O'Day & Brother* for appellants.

(1) Where the preponderance of the evidence is so decidedly in favor of the defeated party as to lead naturally to the conclusion that injustice has been done

him by the judgment, a new trial should be granted. *Ackley v. Staehlin*, 56 Mo. 558; *Hearn v. Keith*, 63 Mo. 84; *Wilson v. Albert*, 89 Mo. 544; *Ellis v. Bray*, 79 Mo. 227; *Lionberger v. Pohlman*, 16 Mo. App. 397; *Hacker v. Brown*, 81 Mo. 68; *Robbins v. Phillips*, 68 Mo. 160; *Schoollings v. Railroad*, 75 Mo. 518; *Moore v. Hutchison*, 69 Mo. 429; *Skink v. Sautter*, 73 Mo. 46. (2) The court erred in its instruction on the theory of the abandonment of the contract; instructions must be based on evidence to support them. *Haskins v. Railroad*, 58 Mo. 302; *Lester v. Railroad*, 60 Mo. 265; *State v. Miller*, 67 Mo. 604; *Ewing v. Gass*, 41 Mo. 192; *Cottrell v. Spics*, 23 Mo. App. 32. (3) Instructions as to credibility of witnesses should not be given in every instance, but only when justified by the conduct of witnesses at the trial or on account of the impeachment of some witness. *White v. Maxcy*, 64 Mo. 552; *State v. Hickam*, 95 Mo. 322; *Batterson v. Vogel*, 10 Mo. App. 235; *Bank v. Murdock*, 62 Mo. 70; *Henry v. Railroad*, 19 S. W. Rep. 239; *State v. Buchler*, 103 Mo. 208. (4) The jury cannot wilfully disregard the testimony of unimpeached and uncontradicted witnesses. *Robison v. Doyle*, 26 Ill. 161; *Insurance Co. v. Gray*, 80 Ill. 30. (5) A judgment will be reversed where illegal testimony has been admitted. *Weil v. Posten*, 77 Mo. 288; *Richie v. Kinney*, 46 Mo. 298; *Farrell v. Brennan*, 32 Mo. 328. (6) An account stated must be objected to by the party to whom it is sent within a reasonable time after its receipt, or he will be bound by the statements therein contained, and his silence will be taken as a confession of the correctness of the same. *Powell v. Railroad*, 65 Mo. 658; *Brawn v. Kimmell*, 67 Mo. 430; *Shepard v. Bank*, 15 Mo. 143. (7) Books of account are competent evidence when the foundation for their admission is laid

by showing that the books contain the original entries in relation to the subject-matter, which entries were made at the time the transaction occurred, so as to constitute a part of the *res gestæ* of the transaction. Plaintiffs' books and also those of the Atlantic & Pacific stock syndicate were admissible in evidence and their exclusion was error. *Nelson v. Nelson*, 90 Mo. 460; *Shepard v. Bank*, 15 Mo. 144; *Penn v. Watson*, 20 Mo. 16; *Smith v. Beattie*, 57 Mo. 281. (8) There are in this record not less than twenty-two exclusions of evidence offered by plaintiffs, and almost all, if not all, properly admissible under the decision of this court in *Anchor Milling Co. v. Walsh*, 18 S. W. Rep. 904. (9) Nor can the excluded entries in plaintiffs' books be regarded merely as cumulative evidence. The latter is additional evidence of the same kind to the same point. *Gliden v. Dunlap*, 28 Me. 379; *Parker v. Hardy*, 24 Pick. 246; 10 Wend. 294. (10) The admission of the letter of John S. Rogers was undoubted error. It was introduced by the defendants pending the cross-examination of the witness Kavanaugh and admitted over plaintiffs' objection and exception. It in effect permitted Capt. Rogers himself to testify through the statements not under oath of John S. Rogers, while plaintiffs could say nothing. It was double hearsay, and considering all things, the most powerful piece of evidence on defendants' side in the case. If the statements in the letter were competent evidence, John S. Rogers himself should have been interrogated as to the matters referred to in it when he was on the witness stand. But this was not done. This case presents this singular anomaly, that the competent documentary evidence of plaintiffs, viz., their books were rigorously excluded, while the incompetent document written by John S. Rogers was carefully admitted.

*Boyle, Adams & McKeighan* for respondents.

(1) The statement of appellant's claim filed in probate court, on which alone appellant can recover, was too uncertain, indefinite, obscure and is wholly insufficient to constitute the cause of action sought to be recovered on. *Watkins v. Donnelly*, 88 Mo. 322. (2) The verdict and judgment were for the right party. No other verdict or judgment could have been rendered without great injustice to the respondent, and therefore the verdict and judgment of the court below should be affirmed without regard to whether or not errors were or were not committed by the lower court in the admission of evidence or the giving of instructions. *Methudy v. Ross*, 81 Mo. 481; *Noble v. Blount*, 77 Mo. 235. (3) The instructions of appellant which were refused were either substantially given by the court's own instructions, or if not were not the law or not founded on any evidence. And, besides, the appellant excepted to the refusal to give all of them, the language of the exception is, "to which action of the court in refusing to give each and all of said instructions so asked by plaintiffs, plaintiffs then and there excepted." (4) The instructions given for respondent contained the law, and were justified and warranted by the evidence. The instructions on abandonment follow the well established law of this court. *Chouteau v. Iron Works*, 83 Mo. 70; 94 Mo. 388. The instructions of the court with regard to the credibility of witnesses were justified by the inconsistencies, contradictions, discrepancies, bias and situation of the witness Kavanaugh, and other circumstances revealed by his evidence. (5) The court committed no error in the admission of the bank's statement as to the available means of the deceased. Such evidence was relevant, and especially so in view of the cross-examina-

tion by counsel for appellant of the respondent. Neither did the court err with respect to the admission of the value or fluctuations of the market in the Atlantic & Pacific stock. Such evidence was relevant and pertinent to the issues, both in a direct and collateral way, and specially made admissible by evidence of the value of stock introduced by appellants. If evidence is admissible for any purpose, it cannot be excluded upon any mere general objection as to its relevancy or competency. *Anderson v. Pike*, 41 Mo. App. 332; *Keim v. Railroad*, 90 Mo. 314. Appellate courts will not review the action of trial courts in admitting secondary evidence where the specific objection is not made at the time. *White v. Stephens*, 13 Mo. 240; *Burdsall v. Davis*, 58 Mo. 138; *Drey v. Doyle*, 99 Mo. 459; *Masonic Mutual Ben. Ass'n v. Lackland*, 97 Mo. 137. The evidence referred to was of course secondary and not the best evidence, but these objections were not made. (6) The verdict was amply sustained by the evidence and was for the right party, and under no view, even the most extreme, can it be held, as urged by counsel in their brief, that the preponderance of evidence was so strongly in favor of appellants that the lower court should have set aside the verdict, and, not having done so, that this court will. *Watkins v. Donnelly*, 88 Mo. 322; *Bank v. Aull's Adm'r*, 80 Mo. 199, 1 Greenleaf's Evidence, secs. 38, 39. (7) It was not error to reject plaintiff's books of account. In the first place the proper foundation was not laid for them, and in the next place they were not admissible at all. *Hensger v. Mullaly*, 23 Mo. 613; *Weldley v. Toney*, 24 Mo. App. 304; *Hensgen v. Donnelly*, 24 Mo. App. 398; *Hissrick v. McPherson*, 20 Mo. 312.

GANTT, P. J.—This suit originated in the probate court of the City of St. Louis in December, 1887. It is

founded on the following demand exhibited against the estate of C. W. Rogers, deceased.

NEW YORK, June 1, 1883.

*Mr. C. W. Rogers, in account with J. & W. Seligman & Co., 1883.*

June 1.   To first installment of subscription, June first, one
    thousand shares Atlantic & Pacific stock ..... . ........ $10,000.00
June 30.   To second installment of subscription, one thousand
    shares Atlantic & Pacific stock........................   6,000.00
                                                            _____
                                                            $16,000.00

J. & W. SELIGMAN & CO.,
By Attorney.

Judgment was rendered for the plaintiffs in the probate court without interest. Both sides appealed to the circuit court of St. Louis. It was there tried before a jury.

After the jury was impaneled the defendant, through her counsel, raised the question that this account did not state a cause of action: *First*. That if it stated a cause of action for stock sold by plaintiffs to the decedent, of which plaintiffs were the owners, then the sale was void under the statute of frauds; and, *second*, that if it was intended to offer evidence that plaintiffs had loaned the money to pay for the stock for the use of decedent, then the account was not sufficient to authorize evidence of money loaned.

Thereupon the plaintiffs stated that they did not expect to show a sale of their own stock to deceased, Mr. Rogers, but they would show that they advanced $16,000 for him to pay for one thousand shares of Atlantic & Pacific Railroad stock, at his request. Upon this statement defendant objected to any evidence on the ground that the account filed did not state a case for money advanced to the use of, or loaned to, C. W. Rogers. The circuit court overruled the objection and defendant excepted.

The plaintiffs offered evidence tending to prove that they advanced $16,000 for C. W. Rogers to pay

for one thousand shares of Atlantic & Pacific Railroad stock; that he was present in their office in New York, and one of the firm said to him, in the presence of witness Kavanaugh, that they had assigned one thousand shares of syndicate stock and would carry it for him, and that he assented to it.

I. The first assignment of error on the part of the plaintiffs is that the court below erred in not setting aside the verdict of the jury and rendering judgment for plaintiffs. This is based upon the claim that there is no evidence whatever upon which the verdict for the defendant can stand.

In this we cannot agree with the learned counsel. The defendant was entitled to a jury trial, the burden of proof was on the plaintiff and the defendant was entitled to have the jury pass upon the credibility of plaintiff's witnesses. The courts may grant new trials when they are satisfied the jury have ignored the evidence, but it is not their province to usurp the function of another jury. This point cannot be sustained.

II. The plaintiffs offered the account books of the Atlantic & Pacific Railroad Stock Syndicate and of J. & W. Seligman & Company, to show certain entries therein. The first to show that C. W. Rogers was a member of the syndicate and the firm books to show that they had charged Mr. Rogers with the $16,000, in due course of business. The trial court excluded the books on the ground that, Capt. Rogers being dead, plaintiffs would not be allowed to testify for themselves by their books.

It has very recently been decided by division number 1 of this court, in *Anchor Milling Co. v. Walsh*, 108 Mo. 277, that an account book of original entries, fair on its face and shown to have been kept in the usual course of business, is admissible in evidence even in favor of the person by whom it is kept. Judge

BLACK in that case reviewed the authorities in this state, and we concur in the conclusion he reached; and we think the books offered were competent, but it does not necessarily follow that this case should be reversed on that account.

On the trial Henry E. Kavanaugh was sworn on behalf of the plaintiffs and testified that he was a clerk in the banking house of J. & W. Seligman & Company; that he knew Capt. C. W. Rogers eight or ten years prior to his death; that he, Rogers, was on intimate terms with said banking house; he was general manager of St. Louis & San Francisco Railroad; that the New York office of said railroad was in the same building with the bank. Jessie Seligman, one of the firm, was also a director in the Atlantic & Pacific Railroad Company. On page 32 of the printed record, Kavanaugh testified without objection that he was present when Mr. Seligman said to Capt. Rogers he would put him down for one thousand shares and directed him witness to so enter it on the books. He was asked if he made the entries himself and he answered he did, in pursuance of Mr. Seligman's instructions. He was then asked:

"*Q.* Have you the books here with you, the original books? *A.* I have the original book entry; yes, sir. (The witness produced a book.)

"*Q.* What book is this before you? *A.* It is the Atlantic & Pacific Stock Syndicate book, the account book.

"*Q.* Were the entries in it made by you at the time? *A.* Yes, sir.

"*Q.* What appears by that book? *A.* Among the the list of subscribers, as appears on this list, is the name of C. W. Rogers for one thousand shares of stock.

"*Q.* Those entries are made in your handwriting and made at the time? *A.* Yes, sir.

"*Q.* They were made in pursuance of instructions you received from Jesse Seligman in the presence and hearing of C. W. Rogers? *A.* Yes, sir.

"*Q.* What position did you then occupy? What were your special duties? *A.* My special duties were taking charge of syndicate stock, stock and bond matters in connection with the house."

As to the syndicate books, this evidence was admitted:

"*Q.* What is the entry here? Read the entry to the notary against Capt. Rogers, so that we can get a copy of it. Read the entry and the heading as to him. *A.* Atlantic & Pacific Railroad Company's Stock Syndicate's Account.

"*Q.* What is the date of that? *A.* June 1, 1893, C. W. Rogers, one thousand shares.

"*Q.* Was that entry made by yourself at the time? *A.* Yes, sir."

This testimony was received without objection, and here we have the specific item charged against Capt. Rogers.

Again, on pages 34, 35, 36 and 37 of the printed record, the following evidence was given and received without objection:

"*Q.* As clerk in charge of the stock and bonds of the stock syndicate, was it not your duty to instruct the bookkeeper, or other clerks in the banking house of J. & W. Seligman & Company to enter up against each individual charged with this stock the amount taken by him? *A.* Yes, sir; it was.

"*Q.* If you gave such instructions, state if you prepared a list of the individuals interested in the syndicate with the amount to be charged in the books, and handed it to the bookkeeper, from which he was to make the entry? *A.* Yes; I have the list here.

"*Q.* Who prepared this list? *A.* I did.

"*Q.* Are the items in your handwriting? *A.* Yes, sir.

"*Q.* Have you those lists present? *A.* Yes, sir.

"*Q.* Are those the lists which you gave the clerk or bookkeeper from which to make entries? *A.* Yes, sir.

"*Q.* Read what the entry in that list is to Capt. Rogers. Read the heading also. *A.* Heading—Atlantic & Pacific Railroad Company Stock Syndicate Account—first installment $10 per share, due June 1, 1883. On that list appears the name of C. W. Rogers, as subscribing for one thousand shares. He is charged $10,000, being at the rate of $10 a share, on that date. In account with J. & W. Seligman & Company, Cr."

Here follows on page 35 and 36 the list of the syndicate subscribers, among which appears the name of C. W. Rogers, "In account with J. & W. Seligman & Co., Cr." Again, on page 37:

"*Q.* The second intallment, six per cent.—you say you have the list; did you prepare it? *A.* Yes, sir.

"*Q.* Read what that is. *A.* Atlantic & Pacific Railroad Company Stock Syndicate Account, second installment $6 a share, due June 30, 1883.

"*Q.* What is the entry there to C. W. Rogers? *A.* C. W. Rogers, one thousand shares; charged $6,000, being $6 a share.

"*Q.* Is that in full for the entire one thousand shares? *A.* Yes, sir; that is in full."

Then follows a list for the second intallment in which appears Capt. Rogers' name. "In account with J. & W. Seligman & Co. Cr."

In this evidence the appellants had the full benefit of the fact that the witness Kavanaugh made out an original list of the subscribers to the syndicate stock for entry in the books, and this original entry was in evidence, and in his evidence the appellants had all

that they are really entitled to on any theory of this evidence.    The entries in the other books could only have been copies of the original material prepared by the witness and merely secondary in their tendency.

Again, on page 44, the following testimony is given by Kavanaugh:

"*Q.* J. &. W. Seligman & Co. advanced the money due from Capt. Rogers, and paid it out for him.  *A.* Yes, sir.

"*Q.* When was the first payment made?  *A.* The first payment was made the thirtieth or thirty-first of May, if my memory serves me right.  I am not sure about that; it was, I think, the thirty-first of May instead of the first of June."

So far as the facts sought to be proven by appellants that they had collected and paid over to the Atlantic & Pacific Railroad Company or its trustee, J. A. Stewart, the purchase money for the syndicate stock, that was shown without objection by the testimony of Henry L. Thornell, pages 100 to 106 in the printed record.  And again (p. 119 of the printed record), it was admitted at the trial that John A. Stewart was president of the United States Trust Company, and that the money for which the $10,000,000 of the Atlantic & Pacific Railroad was sold, was properly paid to him by J. & W. Seligman & Co.

No witness was called to dispute the making of these entries.  While it is error to exclude competent evidence that might effect the verdict, still if the party has had the full benefit as he had here of the principal fact the cause ought not to be reversed because the court excluded secondary evidence.  Here was the living witness, testifying to the conversation; to the direction given him to enter the charge against the decedent for the one thousand shares; his implied

assent to it. He is permitted to read from the originals in his hands to the jury. Can it be said that the fact that the same entries were recorded elsewhere by direction of this same witness would have added so much to his testimony that it would have turned the scale. We think not. The jury would have understood that whatever credence was due these entries, was based wholly upon the trustworthiness of Mr. Kavanaugh. The multiplication of the entry would have added little weight to it. Had there been no other evidence it might have been very important; but here the fact that there was such an entry in the books clearly appears and we think the error is not material enough to justify a reversal for that alone.

III. The plaintiffs assign as error the action of the trial court in permitting the defendant to prove that from March 1, 1886, to March 1, 1887, Captain Rogers, the decedent, had to his credit on deposit in the Continental Bank of St. Louis, a daily balance of not less than $14,800 and generally exceeding $17,000.

When this evidence was offered plaintiff made the general objection that it was irrelevant without specifying any particular ground of the objection. If it was admissible for any purpose, such an objection will not avail. This has been repeatedly ruled in this court. *Margrave v. Ausmuss*, 51 Mo. 561; *Keim v. Railway & Transit Co.*, 90 Mo. 314. No question is made as to the correctness of the statement or the manner of proving it. The contention is that the fact was not competent evidence. "The spirit of modern jurisprudence is in keeping with that of modern science and aims to receive light and information for all that it is worth from whatever source it may come." Commissioner Martin in *State v. Loney*, 82 Mo. 82. It was not claimed that this evidence raised any presumption of fact or law.

Would it aid the jury and assist in solving a case where the evidence was otherwise defective? Now in this case the plaintiffs' case was more or less wanting in direct evidence. They claimed the decedent had purchased one thousand shares of stock of the syndicate and that they had advanced the money for him, but the usual evidences of so important a transaction were absent in the proof. They had no note or memorandum signed by him. It was not claimed he signed the syndicate subscription. Kavanaugh testified he signed Captain Rogers' name to the syndicate list. The original contract was not produced, and its loss under the circumstances was open to severe criticism. It appeared that Captain Rogers was often in the banking house of plaintiffs, and although four years intervened after the alleged subscription, no demand was made on him to pay or give his note. He never received the stock. Not a line of correspondence between the parties in regard to a matter involving $16,000. We do not overlook the two circular letters that are in evidence. It is not pretended that Captain Rogers replied to either of those, nor was his failure to reply noted by plaintiffs or made the subject of complaint. Moreover, those notices do not purport to be a statement of claim for money loaned, but for stock sold; and came from the plaintiffs, not in their individual characters, but as agents of the syndicate.

In the light of Kavanaugh's evidence, it is clear the plaintiffs did not regard these letters as a demand. Such a claim would be contradictory of all the evidence of Kavanaugh. His testimony is unequivocal that they were to "carry him," and did not expect or require him to pay for the stock at the time. These notices might be regarded as evidence of the account stated were it not clear that plaintiffs themselves attached no

such significance to them. Is it according to the usual experience of mankind that a banking house would advance $16,000 to a customer and take no note or other security for a period of four years?

On the other hand, is it not contrary to the almost universal practice among business men, that a man perfectly solvent, with a bank account showing daily a balance of $17,000 to his credit on which he was receiving no interest whatever, would permit a debt of $16,000 to stand all that time, with the interest accumulating? If it is, then the jury should be put in possession of a knowledge of all these facts, the solvency as well as others, in determining whether there was in fact such a debt. Being a matter within the "experience of common life," the jury was entitled to the facts. We think the court committed no error in admitting this evidence under all the circumstances. *Lenox v. Harrison*, 88 Mo. loc. cit. 496-7; *Vogt v. Butler*, 105 Mo. 479; *Mathias v. O'Neill*, 94 Mo. 520; *Bank v. Aull*, 80 Mo. 199; *Fitzgerald v. Barker*, 85 Mo. 13; *Johnson v. Com.* 115 Pa. St. 369.

Again it is assigned as ground for new trial that the court permitted defendant to show the fluctuation in the market value of the stock during the year 1886, and its value in October, 1887. The objection to this evidence was merely that it was irrelevant. We are cited to *Golson v. Ebert*, 52 Mo. 260.

In that case it was ruled that the price current was properly excluded, because there was no satisfactory evidence that it contained a correct statement of the prices, by one who knew the fact, and the price current itself was not in evidence. No points were made in the briefs of either counsel on the question. That case has never since been quoted and approved by this court as maintaining *that under no circumstances* is a price current admissible in evidence. The contrary is

now too well established to be questioned. The transactions of the business world are to a great extent based upon the market reports. "Value consists in the estimate, in the opinion of those influencing a market. The opinions of such persons can only be presented, in most cases, by hearsay. Hence it is that it is no objection to the evidence of a witness testifying as to market value that such evidence rests on hearsay. So it is admissible to fall back, as a basis of opinion, *on prices current*, provided they be traceable to reliable sources." 1 Wharton's Evidence, sec. 449, and cases cited; *Cliquot's Champagne*, 3 Wall. (U. S.) 114; *Chaffee v. United States*, 18 Wall. 541; *Terry v. McNiel*, 58 Barb. 241; *Lush v. Druse*, 4 Wend. 314; *Peter v. Thickstun*, 51 Mich. 589; *Whitney v. Thatcher*, 117 Mass. 523; *Laurent v. Vaughn*, 30 Vt. 90.

We think it was a fact the jury might well consider in this case in connection with the other evidence as to the power of plaintiffs over this stock in the syndicate agreement, and the four years of delay in demanding payment for the stock and the ability of the deceased to pay for it at any time if he really owed for it.

It is also assigned that the court erred in permitting Mrs. Rogers to testify that no claims except this one were ever presented to her as executrix for payment. No objection was made to her competency as a witness, and the objection is in the general form, that the evidence was irrelevant. No specific harm was pointed out. We think this also was a fact that might be considered, and even if irrelevant would not be sufficient grounds for reversal.

It is next urged that reversible error was committed in permitting John S. Rogers, the son of Captain Rogers, to testify that it was a habit of his father

to keep copies of all letters.   Here again no specific. objection was made to this evidence.   Indeed there was no objection at all made to the witness's statement that he had examined all the papers and letters and with the exception of the two carbon circulars, testified to by Mr. Kavanaugh, he could find nothing relating to this stock.   There is no force in this point.   Plaintiffs did not claim they ever had demanded this money in any of their letters, hence the proof was wholly uncontradicted.   Moreover, we think it was perfectly competent to prove that no demand was ever made, and this evidence tended in that direction.

Again plaintiffs complain that the court erred in the third instruction given for defendant to the effect that if the jury believed that any witness had wilfully sworn falsely to any material fact they might disregard his testimony.   This court has invariably held that this was a proper instruction where material contradictory evidence has been given in a cause.   That there was contradictory evidence in this cause there can be no doubt; that there was evidence that the jury might believe or disbelieve as it appeared to them to be entitled to credence is also clear.   *Henry v. Railroad,* 109 Mo. 488.

The only remaining instruction of which appellants complain in their brief is the first given for defendant, which authorized the jury to find for the defendant if plaintiffs and defendant mutually abandoned and canceled the agreement of defendant's testator to take the one thousand shares of stock, and that such an abandonment might be inferred from the conduct, acts and dealings of the parties.   It is strenuously insisted that there was no evidence whatever upon which this instruction could stand.   A similar instruction was approved in *Chouteau v. Iron Works,* 83 Mo. 73; *Chouteau v. Iron Works,* 94 Mo. 388.   When it is considered

that Captain Rogers was a constant visitor in New York; often in appellants' banking house; that they never for four years made any demand on him for pay-ment for this stock; that no specific shares were set apart or assigned to him; his abundant ability to pay for it; plaintiffs' knowledge of his failing health; the testimony of Kavanaugh "that some of the sub-scriptions had been canceled, and that later J. & W. Seligman & Company jointly assumed some of the sub-scriptions," and "that some changes were made;" the right of the firm in case of over subscriptions to assign the stock or not to Rogers; the statement of Kava-naugh that the subscriptions exceeded the offering, we think it was competent for the jury to pass upon the question whether they had not abandoned any idea of looking to him for payment for this amount. The court properly instructed the jury that plaintiffs could only recover in this case *for money loaned* or *paid to the use of Captain Rogers.* Under this evidence the jury might very properly have found plaintiffs sold him this stock *and did not loan him the money to pay for it.* If so, under the pleadings and assurance of counsel, plaintiffs *could not recover for stock sold* to him.

Upon a full re-argument of this cause we have con-sidered anew all the points of the foregoing opinion and are satisfied with the conclusions reached. The accounts read in evidence by Kavanaugh were from the original entries and other books made from these contemporaneous original entries would have added nothing to their weight. Nor do we think the letter of John S. Rogers any cause for reversing this case. It was simply after all a mere refusal to pay a demand made on his mother until further evidence was given of her liability. The plaintiffs had the benefit of both of their letters in this connection and we think the direful

consequences that flowed from - this simple note are imaginary rather than real.

Upon reargument we have become fully satisfied that the statement is wholly insufficient to sustain a judgment and the defendant's objection to evidence under it should have been sustained. The law requires a statement of facts. This pleading gives no notification that plaintiffs would expect to prove a loan or money advanced for Captain Rogers' benefit. *Watkins v. Donnelly*, 88 Mo. 322; *Brashears v. Strock*, 46 Mo. 221; *Wilson v. Polk Co.*, 112 Mo. 126.

The judgment is for the right party and is affirmed. All concur.