### GIBSON v. CONNECTICUT FIRE INS. CO.

(Circuit Court, E. D. Missouri, E. D. November 11, 1896.)

#### No. 3,973.

CONFLICT OF LAWS—INSURANCE POLICIES.

One W., an insurance broker, residing in Missouri, with the assent of plaintiff, also a resident of Missouri, wrote to the agent of defendant insurance company at St. Paul, Minn., asking him to place insurance upon certain real estate of plaintiff in Minnesota. The agent forwarded the application to defendant, at its home office in Connecticut. It was accepted, and a policy forwarded to be countersigned by the agent at St. Paul, who forwarded it to W., in Missouri, to be delivered to plaintiff, if acceptable; and it was delivered to and accepted by plaintiff, in Missouri. The policy was conspicuously indorsed, "Minnesota Standard Policy," and contained a clause requiring the counter signature of the agent at St. Paul to its validity, and also provisions which were valid by the law of Minnesota, but void under those of Missouri. *Held*, that the parties must be deemed to have intended to contract with reference to the laws of Minnesota, and the policy was accordingly a Minnesota, and not a Missouri, contract.

This was an action by Charles Gibson against the Connecticut Fire Insurance Company on a policy of insurance. There was a verdict for plaintiff, and defendant moves for a new trial.

Campbell & Ryan, for plaintiff.

Boyle, Priest & Lehmann, for defendant.

PHILIPS, District Judge. This cause was tried before a jury. There being practically no dispute between the parties as to the controlling facts of the case, it was suggested to counsel by the court that, as the determination of the case turned entirely upon the law arising from the conceded facts, the jury should, by consent, be discharged, to afford the court an opportunity for investigation of the questions of law involved. This suggestion not being accepted by the plaintiff, the court directed the jury to return a verdict for the plaintiff, stating to counsel at the time that this

action was not to be·taken as the conclusive judgment of the court as to the law of the case, and that, therefore, the defendant could file a motion for a new trial, which the·court would take under advisement, so that, if the verdict should be approved on further investigation by the court, it would obviate the necessity of a new trial; otherwise a new trial would be ordered.

The material facts of the case are sufficiently stated in the following discussion: The controlling question to be answered is, is the contract of insurance a Missouri or a Minnesota contract? If the right of recovery is determinable by the statute law of the state of Missouri, the plaintiff is entitled to recover the whole amount of insurance expressed in the policy, but if it is a Minnesota contract the finding must be for the defendant, as the action in the latter case should have been predicated upon the award of arbitrators, duly made, instead of upon the contract for the whole amount of the insurance expressed in the policy. The evidence showed that one Windmuller, residing and doing business at St. Louis, in the nature somewhat of an insurance broker, had been for some time insuring property situate in St. Louis for the plaintiff, and being aware of the fact that the plaintiff owned a house and lot situate at Lake Minnetonka, Hennepin county, Minn., suggested to him that he procure insurance thereon, to which the plaintiff assented, whereupon Windmuller wrote to one Gilbert, an insurance agent at St. Paul, Minn., asking him if he could place $5,000 of insurance on this property in companies represented by him. Gilbert, who was the local agent for the defendant company at St. Paul, forwarded an application to the company at Hartford, Conn., for a risk of $2,500 on this property, which was accepted by the company, and a policy made out signed by the president of the company on the 18th day of July, 1893, and forwarded to Gilbert to be countersigned by him. The policy thus forwarded to Gilbert contained this clause: "This policy shall not be valid until countersigned by the duly-authorized agent of the company at St. Paul, Minn." On receipt thereof, Gilbert sent the policy by mail to Windmuller at St. Louis, accompanied by a letter stating the amount of the premium, and directing him to deliver the policy to the plaintiff; if acceptable. The policy was accordingly delivered to the plaintiff, who accepted the same without demur.

It is to be observed, in the first place, that Windmuller was not the agent of the defendant company, authorized by it to solicit or make insurance contracts on any property in the state of Minnesota. It was not represented by Windmuller to plaintiff that he had any such agency, nor is there any evidence whatever of any holding out by the defendant of Windmuller as its agent for any purpose. Nor had the plaintiff any ground for supposing that Windmuller was clothed with any such authority. So far as the officers of the company were concerned, there was no recognition of Windmuller in the transaction. And, so far as anything appears on the face of the policy, or from any evidence in this case, it does not appear that the defendant company, at the time it accepted the policy, even knew that the plaintiff was a resident of

Missouri. To maintain the proposition that the policy nevertheless became a Missouri contract, it is contended by plaintiff that, as nothing was said between him and Windmuller, at the time of the interview respecting the procuring of this insurance, as to the amount of the premium, and inasmuch as the company wrote into the policy a different rate from that suggested by Windmuller to Gilbert, and inasmuch as Gilbert, after the countersigning, forwarded the policy to Windmuller, to be delivered to plaintiff, if acceptable to him, the contract of insurance did not become consummate until accepted by plaintiff at St. Louis, whereby his acquiescence in the amount of the premium was manifested. This may be conceded; but the question remains, did this mere act of acceptance by plaintiff at St. Louis have the effect in law to make the policy a Missouri contract? I hold that when plaintiff accepted the policy he thereby ratified the acts of Gilbert, the Minnesota agent, and by relation it became operative as a Minnesota contract. The case is distinguishable in its facts from cases like those relied upon by plaintiff's counsel, such as life policies where the assured lived in Missouri, and the insurance was effected through a soliciting agent of the nonresident company where the assured resided, when the policy was forwarded to the local agent to be countersigned and delivered by him to the assured, to become operative on payment of the first premium; as, also, to the class of cases of fire insurance effected through a local agent to be countersigned by him and delivered to the insured. There being nothing on the face of the policy, and the attending circumstances of the transaction, indicating a purpose not to regard it as a contract subject to the laws of the state where the subject-matter of the insurance is situated, the policy providing on its face that it should not be valid until countersigned by the duly-authorized agent of the company at St. Paul, Minn., without any condition respecting the payment of the first premium, why should it be regarded as a Missouri contract? In Golson v. Ebert, 52 Mo. 260–271, it is held that, where the contract is made with an agent in one state, subject to the ratification of the principal in another state, when so ratified it becomes a contract of the state, to be interpreted by its laws, where the agent resides. "It would become binding, not as a new contract made at St. Louis, but the contract would become binding as made and where made by the agent, and would have just the same effect as it would have if the agent had been fully authorized to make the contract before it is made, and no ratification is necessary." The court further say: "This contract was made in New Orleans, was to be performed in New Orleans, and if it is ratified by defendant it is the contract made and to be performed. Hence we must look to the laws of Louisiana to ascertain its validity." Windmuller, as already stated, was not the agent of the insurance company, but acted rather for the plaintiff in sending his application to the company's agent at St. Paul, who countersigned it for the company as its agent, and forwarded it to Windmuller, to be delivered to the plaintiff. Windmuller was thus the mere conduit of delivery, and made so by the plaintiff. The delivery, therefore, was the same

in law as if made by Gilbert directly to plaintiff, and therefore the transaction stands in law the same as if plaintiff had made his application directly to the Minnesota agent, and received from him the policy. Hicks v. Insurance Co., 9 C. C. A. 215, 60 Fed. 690; Schwartz v. Insurance Co., 18 Minn. 448 (Gil. 404).

Be this as it may, the further controlling fact appears in this case that the subject of insurance is real property situated in the state of Minnesota. Looking at the face of the policy, the locus of the company and of the countersigning agent, and the situs of the property itself, there is nothing to indicate that it in any respect pertains to a Missouri contract subject to, or to be affected by, its local laws and internal policy. The effort of the plaintiff is to subject the policy to the operation of sections 5897 and 5898 of the Revised Statutes of Missouri. The first section applies to the instance of a single policy on the property, and declares that in case of loss by fire the insurance company "shall not be permitted to deny that the property insured thereby was worth at the time of issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss; and the burden of proving such depreciation shall be upon the defendant." Section 5898 provides for the instance where the property shall be insured in more than one company. In the event of suit, "the defendant shall not be permitted to deny that the property insured was worth the aggregate of the several amounts for which it was insured at the time the policy was issued, unless willful fraud or misrepresentation is shown on the part of the insured in obtaining such additional insurance; and in such suit the measure of damage shall be as provided in the preceding section." But this section contains the further express proviso that "this and the preceding section shall apply only to real property insured." On settled principles of law, the implication is that it refers to real estate situate in this state. "The legislative authority of any state must spend its force within the territorial limits of the state." Cooley, Const. Lim. 151. As such statutes have no extraterritorial force, the general presumption is that they operate alone on property within the state. Stanley v. Railway Co., 100 Mo. 435, 13 S. W. 709; Merrill v. Railroad Co., 21 Am. & Eng. R. Cas. 48; Ror. Int. St. Law, 149–154. It is not conceivable that the legislature supposed they were formulating a state policy respecting insurance on real property situated within the jurisdiction of a foreign sovereignty, subject to the legislation and laws thereof.

The question here presented is, to what law did the parties to this policy intend that the matter of compensation, in case of loss, should be submitted? Courts, in considering questions like this, sometimes fail to observe the proper distinction between the lex fori and the lex contractus, and that class of contracts properly determinable by what is termed the "lex loci solutionis." Mr. Justice Matthews,

with characteristic learning and perspicuity, has pointed out this distinction in Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102. After observing that the term "lex loci contractus," in common acceptation, may have a double sense, as applied indifferently to the law of the place where the contract was entered into and to the place of performance, said:

"When it is employed to describe the law of the seat of the obligation it is, on that account, confusing. The law we are in search of, which is to decide upon the nature, interpretation, and validity of the engagement in question, is that which the parties have either expressly or presumptively incorporated into their contract as constituting its obligations."

The following propositions may be formulated from this opinion: It is a principle of universal justice that in every forum a contract is governed by the law with a view to which it was made, and therefore the mere place should not govern the transaction when it appears that it is entered into with a direct reference to the law of another country. Second. That "it is necessary to consider by what general law the parties intended that the transaction should be governed, or rather by what general law it is just to presume that they have submitted themselves in the matter." Third. That it is to be remembered "that in obligations it is the will of the contracting parties, and not the law, which fixed the place of fulfillment,—whether that place be fixed by express words or by tacit implication,—as the place to the jurisdiction of which the contracting parties elected to submit themselves." There is neither anything in the Missouri statute, nor under general law, to prevent parties from making a contract solvable by the laws of Minnesota respecting property situated in that state. Robinson v. Bland, 2 Burrows, 1078; Story, Confl. Laws, 280, 281. And whether they so intended, both the subject-matter and the contract itself are to be looked at. Justice Willes, in Lloyd v. Guibert, L. R. 1 Q. B. 120. The house and lot were in the state of Minnesota. The only authorized agent of the defendant to solicit policies of insurance on such property and to countersign and deliver policies was located at St. Paul, in that state. And I find posted on the face of the policy a receipt from the plaintiff to the defendant for a payment on a small loss sustained on this property under this policy in 1894, which speaks of this "policy No. 4,054, issued at St. Paul, Minn., agency." The policy insures "to an amount not exceeding" $2,500, and then it expressly provides that:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with the proper deductions for depreciations, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. Said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided."

The plaintiff is especially to be presumed to know the law, as he is a lawyer of learning and experience. He knew, when he accepted this policy, that the last-named provision was inoperative under the statutes of Missouri as contrary to the local policy of the state. One of the canons of the law for ascertaining the mind—the understanding—of the parties as to what jurisdiction the contract is to be re-

ferred for solution is that "the parties cannot be presumed to have contemplated the law which would defeat their engagements." Pritchard v. Norton, 106 U. S. 137, 1 Sup. Ct. 112.   As said by Judge Chitty in Re Missouri S. S. Co., 42 Ch. Div. 329:

"The circumstance that the stipulations which the client asks to have struck out of the contracts are allowed by the law of one country and disallowed by the law of the other country affords a cogent reason for holding that the parties were contracting with reference to the law of the country which allowed, and not to the law which disallowed, the stipulation.  It is unreasonable to presume that the parties inserted in the contract stipulations which they intended should be nugatory and void."

At the time this policy was issued, the statute of Minnesota (1 Gen. St. 1894, § 3201 et seq.) provided that after January 1, 1890, "no fire insurance company, corporation or association, their officers or agents, shall make, issue, use or deliver for use any fire insurance policy on property in this state," etc., except in conformity with requirements of its statute, which provided that the insurance commissioner should formulate a form of policy in conformity with that employed in the state of New York.   This policy was on the form prepared by the insurance commissioner of that state, and was received by the plaintiff with the words "Minn. Standard Policy" printed in large type on the front of the policy when folded.   It is true that so much of this policy as authorized said commissioner to prepare a form of policy, as near as may be, like that prescribed by the law of the state of New York, has been declared by the supreme court of Minnesota to be unconstitutional, on the ground that it was a delegation of legislative power to the commissioner.   Anderson v. Assurance Co., 59 Minn. 132, 60 N. W. 1095, and 63 N. W. 241. But this in no wise impairs the force of the argument that the parties to the contract—the one by employing and the other by accepting this form of policy—indicated their understanding that it was a Minnesota contract.   In this connection it is well enough to advert to the fact that at the trial the plaintiff sought to testify in his behalf that at the time he authorized Windmuller to send in his application for insurance he stated to him, in effect, that he wanted a Missouri policy contract, to prevent any trouble on the question of the law of its solution.   This was excluded by the court, for the reason that the ground upon which such statements to agents are admissible being that, as it is the duty of the faithful agent to make known to his principal any material information or fact coming to him in the transaction of the business of his agency, the law presumes that he performs such duty, does not obtain in this case, because Windmuller at the time was not the agent of the defendant, commissioned to transact this business; and there is no pretense that he ever informed the company or Gilbert of such claimed statement; and because it was an attempt to interpolate into a contract, afterwards reduced to writing, a provision embracing the substance of an antecedent statement inconsistent with that expressed in the instrument itself; and because, when the plaintiff accepted the policy in its present form, he is presumed to have waived any such preference for a Missouri contract policy.   For, not only was it blazoned before his

eyes, when he accepted the policy, that this is a Minnesota standard policy, but in the very body of the instrument, in large type, did it expressly declare that any loss by fire should be adjusted on the basis of the actual value of the property, as provided under the law of Minnesota, and inadmissible under the law of Missouri. With this stipulation in the policy, he accepted it, and for over two years made no objection thereto; and when the loss occurred he declared his understanding of the contract to be that the provisions respecting the valuation of the loss were binding, because he consented, after an unsuccessful parley for adjustment with the defendant, to submit to arbitration as provided in the policy. He selected his arbitrator, as did the defendant, who selected the umpire; and not until after these arbitrators had entered upon the discharge of their duties did the plaintiff protest that he made claim under the Missouri statute, and this, doubtless, because he had reason to fear the result of their finding, which placed a valuation lower than he claims. It is inadmissible to say that this action on his part is consistent with his present interpretation of the contract. There was no occasion for a submission to arbitration, if it was intended by plaintiff to be a Missouri contract.

When this policy was issued by the defendant, countersigned by its only recognized agent at St. Paul, insuring a house situated in Minnesota, and when it was accepted by the plaintiff, there was no fact or circumstance to give color to a supposition that the company was making a contract subject to the local insurance laws of the state of Missouri; nor did the plaintiff believe so for two years thereafter, and until after the time he elected to submit the matter to arbitration. Therefore, to hold the defendant amenable to the greater liability imposed by the Missouri statute, would, in my judgment, be little less than a fraud on the defendant. It results that the motion for a new trial should be sustained.