MATT ANDERSON *vs.* MANCHESTER FIRE ASSURANCE CO.

Argued Oct. 11, 1894.   Affirmed Nov. 20, 1894.

No. 8972.

**Laws 1889, ch. 217, if constitutional supersedes the rule in Lamberton v. Connecticut Fire Ins. Co., 39 Minn. 129.**

Laws 1889, ch. 217, providing for a uniform policy of fire insurance by making the use of the standard policy compulsory, enables the parties to bind themselves by the conditions contained in it, thus changing the rule in *Lamberton* v. *Connecticut Fire Ins. Co.*, 39 Minn. 129, in respect to the condition considered in that case. Canty, J., dissenting.

On Reargument.

**Laws 1889, ch. 217, held unconstitutional.**

Laws 1889, ch. 217, which provided for the preparation by the insurance commissioner, and the adoption, of the "Minnesota standard policy," is unconstitutional and void, for the reason that it attempted to delegate legislative power to the Insurance Commissioner.

**Waiver of condition in a policy by acts in pais.**

Where a policy of insurance provided, "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy," *held,* by delivering the policy knowing the existence of other insurance on the premises, the insurer waived the condition, though no such waiver was indorsed on the policy.

Appeal by defendant, the Manchester Fire Insurance Company from an order of the District Court of St. Louis County, *S. H. Moer*, J., made March 13, 1894, denying its motion for a new trial after verdict for plaintiff, Matt Anderson, for $800.

On May 9, 1893, defendant issued to the plaintiff its policy of insurance whereby in consideration of $32 it insured him for the

term of one year next ensuing against all direct loss or damage by fire to the amount of $800 on his two story frame building situated on lot No. 24 in block No. 18 in the village of Virginia, Minn. The policy was in the form and contained the provisions prescribed by the Insurance Commissioner under Laws 1889, ch. 217. The provisions material to the question involved, are set out in the opinion of the Chief Justice. The building was worth $1,500 and was on June 18, 1893, totally destroyed by fire. When this policy was issued there was other insurance on the building to the amount of $500. This fact was known to defendant's soliciting agent when he made and delivered the policy to plaintiff, but no consent thereto or notice thereof is written in or upon the policy. Plaintiff was foreign born and cannot read or write English, and can converse in English only imperfectly. He did not know or have notice that the policy contained the provisions set out in the opinion. Notice of the fire was given and proofs of loss were made and served. The defendant refused to pay the insurance and this action was brought to recover the amount. The defendant relied on the condition against other insurance claiming it was not waived by any person having authority to waive it, that Laws 1889, ch. 217, and the action of the Insurance Commissioner in prescribing the form of policy thereunder had superseded *Lamberton* v. *Connecticut Fire Ins. Co.,* 39 Minn. 129. The trial court held otherwise and adhered to that decision. Defendant excepted. The jury returned a verdict for plaintiff. A motion for a new trial was denied and defendant appeals.

*S. T. & Wm. Harrison,* for appellant, cited *Quinlan* v. *Providence W. Ins. Co.,* 133 N. Y. 356; *Moore* v. *Hanover Fire Ins. Co.,* 141 N. Y. 219; *Wilcox* v. *Continental Ins. Co.,* 85 Wis. 193; *Bourgeois* v. *Northwestern Nat. Ins. Co.,* 86 Wis. 606.

*Jno. Jenswold, Jr.,* for respondent, cited *Kausal* v. *Minnesota F. M. F. Ins. Co.,* 31 Minn. 17; *Lamberton* v. *Connecticut Fire Ins. Co.,* 39 Minn. 129; *Brandrup* v. *St. Paul Fire & M. Ins. Co.,* 27 Minn. 393; *Kister* v. *Lebanon Mut. Ins. Co.,* 128 Pa. St. 553; *Hoose* v. *Prescott Ins. Co.,* 84 Mich. 309; *Miller* v. *Phoenix M. L. Ins. Co.,* 107 N. Y. 292.

After the opinions of November 20, 1894, were filed, the plaintiff, Matt Anderson, applied December 4, 1894, for permission to reargue the case on the ground suggested in those opinions. Leave was granted and by the courtesy of plaintiff's counsel permission was given Messrs. Bunn & Hadley to also file a brief for respondent, as they were concerned in several actions pending in the District Court of Ramsey County which might be controlled by the result (See Laws 1895, ch. 175, § 53.)

*S. T. & Wm. Harrison, Kitchel Cohen & Shaw*, for appellant.

The question presented on this rehearing is whether Laws 1889, ch. 217, is unconstitutional as an unauthorized delegation of legislative power to the Insurance Commissioner of the state. What the legislature intended to adopt by the act in question was a contract which in its terms and conditions should be the same as the New York standard policy, so far as the same could be made applicable. The Insurance Commissioner was clothed with no discretion except to make in the preparation of the policy such clerical changes as would make the contract a Minnesota contract instead of a New York contract.

Such minor details in the adjustment of the form of the policy were properly submitted to the officer who under the laws of this state had charge and control over the administration of the business of fire insurance here. The New York form contained throughout the words, "Standard Fire Insurance Policy of the State of New York." The words appeared not only upon the policy itself, but upon each of the riders in the policy. There were other formal matters, such as the size of the sheets on which the policies should be printed, and the mode of designating the riders or schedules, and it may be that in the mind of the legislature there existed some other practical questions which in its judgment could be best settled by the officer in charge of the practical administration of the insurance department.

That legislative power cannot be delegated under our constitution, is elementary law. The difficulty lies in determining what authority or discretion may be lodged in a body other than the legislative without contravening the constitutional principle. The rule of construction has been well expressed in *State* v. *Chicago, M.*

*& St. P. Ry. Co.*, 38 Minn. 281, reversed on appeal to the Supreme Court of the United States on other grounds. *Chicago, M. & St. P. Ry. Co.* v. *Minnesota*, 134 U. S. 418.

The Supreme Court of the United States has gone even further than our own court on this point. *Field* v. *Clark*, 143 U. S. 649.

Laws 1872, ch. 1 (1878 G. S. ch. 34, Title 6,) which is the basis of the present insurance law of Minnesota is in its nature a retaliatory act. It imposes upon all foreign companies the taxes, fines and other license obligations which are imposed upon insurance companies of this state doing business in the foreign state. This retaliatory or reciprocal provision of the insurance law has never been discussed in this state in regard to its constitutionality, but in those states where the question has arisen it has been held that this provision does not constitute a surrender by the legislature of its legislative functions to the foreign state. *Home Ins. Co.* v. *Swigert*, 104 Ill. 653; *State ex rel.* v. *Insurance Co.*, 115 Ind. 257; *Phoenix Ins. Co.* v. *Welch*, 29 Kans. 672; *People* v. *Fire Association*, 92 N. Y. 311.

A statute should not be declared unconstitutional unless in the judgment of the court its invalidity is placed beyond a reasonable doubt. *Home Ins. Co.* v. *Swigert*, 104 Ill. 653.

The Pennsylvania case, *O'Neil* v. *American Fire Ins. Co.*, 166 Pa. St. 72, was decided under a law differing materially from our standard policy act.

The Minnesota standard policy contains not only the waiver clause which was discussed in *Lamberton* v. *Connecticut Fire Ins. Co.*, 39 Minn. 129, but has, in addition to the language there considered, the following stipulation: "Nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached" to the policy. This additional provision, which is a part of the policy here in suit, constitutes a vital distinction between this case and the Lamberton case.

The distinct purpose of this agreement is to make the contract exclusively a written one, and this purpose is not opposed to public policy.

*Jno. Jenswold, Jr.*, for respondent, argued that the legislature could not delegate its power to the Insurance Commissioner, and cited *City*

*of Evansville* v. *State ex rel.,* 118 Ind. 426; *Bradshaw* v. *Lankford,* 73 Md. 428; *State ex rel.* v. *Young,* 29 Minn. 474; *Commissioners of Hennepin Co.* v. *Robinson,* 16 Minn. 381; *In re Wilson,* 32 Minn. 145; *Dougherty* v. *Austin,* 94 Cal. 601.

*Bunn & Hadley,* also for respondent.

The question is, whether this policy is an act of the legislature itself or whether it is the act of some other person, under a delegated authority from the Legislature. The act does not fix the terms or conditions of the policy, the use of which it commands. It delegates the power to fix the terms and conditions. The appointee of this power is not named. He is the person who may happen to be. Insurance Commissioner when the time comes to file the form. He is not required to report his work to the Legislature, but simply to file it in his office. It does not become part of the statute in fact, is not recorded in the statute book, nor can a trace of it be found in the records of either branch of the Legislature. The commissioner had until August to prepare his policy over which when filed the Legislature had no control whatever. They did not consider, they had no knowledge of, the form which they required to be used exclusively in the state under heavy penalties.

.The elementary books divide a statute into three parts, the declaratory, the directory, and the vindicatory. In this statute the Legislature furnished the first and third. It delegated the preparation of the second. It turned the preparation of the policy over to the Commissioner, and gave him four months in which to do his work and file a copy of it in his office. Whoever was interested to know what policy he must use, was required to look in the pigeon holes of the Commissioner's desk, not in the act of assembly. The people of the state were required to take notice at their peril of whatever law the Commissioner might pass and file in his office. The preparation of the policy was the gist and sole purpose of the act. The enforcement of that policy was the sole object of its penalties. Take away the policy framed by the Commissioner and the act is meaningless, without force or effect. If time is taken to scan the standard policy, it will be found a work of scissors and paste. Culled from here and there, from a hundred various policies; edited and jumbled together so as to be as cut-throat a policy as was ever

invented, a mass of various and in many instances inconsistent or incongruous clauses. Provisions are put in which this court had declared void; for example, the very provision on which this case was made to turn. *Lamberton* v. *Connecticut Fire Ins. Co.*, 39 Minn. 129. It is impossible that a delegation of legislative power to one man can fasten on the people of the State a form of contract, which either is or might be open to such objections. It is not to be supposed that a really mischievous form of policy would pass both houses of the Legislature unchallenged. If this should happen the people would still have the remaining safeguard of a Governor's veto. But this act steered past both legislative discussion and executive veto. The form of policy was to be fixed without knowledge or thought by the Legislature or Governor of a single one of its many and important provisions, provisions to be enforced by fines and penalties. *O'Neil* v. *American Fire Ins. Co.*, 166 Pa. St. 72.

But the constitutional question does not arise if the policy be given simply the force and effect of a voluntary contract of the parties. We think that ought to be its construction. It is certain that the Legislature never had an idea that it would have any other force. *Reed* v. *Washington F. & M. Ins. Co.*, 138 Mass. 572; *Quinlan* v. *Providence W. Ins. Co.*, 133 N. Y. 356; *Steele* v. *German Ins. Co.*, 93 Mich. 81; *Michigan Shingle Co.* v. *State Inv. & Ins. Co.*, 94 Mich. 389; *Armstrong* v. *Western Manufacturers' Mut. Ins. Co.*, 95 Mich. 137; *Bourgeois* v. *Northwestern Nat. Ins. Co.*, 86 Wis. 606.

Finally, we do not see how the first opinion in this case can be reconciled with *Powers Dry Goods Co.* v. *Imperial Fire Ins. Co.*, 48 Minn. 380. The policies in that case were standard form policies. The point was argued in briefs on both sides whether the policy was to have the effect of a statutory enactment. But the court affirmed the judgment below, which disposed of the case against the companies upon parol waivers and estoppels by acts in pais of insurance adjusters. This was contrary to the letter of the contract, that there could be no waiver but by writing indorsed on the policy.

GILFILLAN, C. J. May 9, 1893, the defendant, by a Minnesota standard policy, insured a building of plaintiff against loss or damage by fire for one year, and June 18th the building was destroyed

by fire.   At the time of and prior to the issuance of the policy, the plaintiff had other insurance on the building, to the amount of $500.

The policy of defendant (the standard policy) contains this condition: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, other contract of insurance, whether valid or not, on property covered in whole or in part by this policy,"—and this further condition: "And no officer, agent, or representative of this company shall have power to waive any provision or condition of this policy except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions and conditions, no officer, agent, or representative shall have such power or be deemed or held to have waived such provision or condition unless such waiver, if any, shall be written upon or attached hereto." There was no indorsement on the policy referring in any way to the other and previous insurance.

The only question in the case is, could an agent of the defendant, notwithstanding the last above quoted condition, waive by parol, and without indorsing on the policy, the condition as to other insurance?

In *Lamberton* v. *Connecticut Fire Ins. Co.*, 39 Minn. 129, (39 N. W. 76,) the court passed upon a condition similar to the condition last above quoted, and held it to be not an attempt to limit or restrict the power of any particular agent or class of agents, but to disable one of the parties to make, even with the consent of the other, an agreement that would otherwise be valid; and the court said: "A contracting party cannot so tie his own hands, so restrict his own legal capacity for future action, that he has not the power, even with the assent of the other party, to bind or obligate himself by his further action or agreement contrary to the terms of the written contract." The court decided, in effect, that such a condition was nugatory; that the parties could not bind themselves by any such condition.

The defendant claims that Laws 1889, ch. 217, providing for a uniform policy of fire insurance, to be known as the "Minnesota Standard Policy," changed the rule of law in that particular; and

that, by requiring the standard policy to be used, the act not only enables, but enjoins, the parties to bind themselves by the terms, provisions, and conditions contained in it.

*No other question on that act is suggested by either party, either as to its validity or construction in any particular, except as above stated; and we will pass on nothing but the point thus made as applying to the condition last above quoted.*

The standard policy was, under the act, prepared by the Insurance Commissioner, with the assistance of the Attorney General. Its use by insurance companies doing business in this state is made compulsory. The courts must, when called on, interpret it and its various provisions and conditions, and generally by the same rules as though the form of policy were voluntarily adopted by the parties. But in respect to the power of the parties to insert the provisions and conditions that are contained in the standard policy, and the binding effect of them, the act is conclusive; for it would be absurd to say that, while the statute compels the use of a particular condition, the parties cannot or shall not bind themselves by it, but it may be nugatory. By requiring the condition to be inserted, the statute certainly enables the parties to make the condition. It follows that the conditions quoted are valid and binding. In respect to the power of the parties to bind themselves by such conditions, the act changes the rule in the *Lamberton* Case.

Order reversed.

CANTY, J. (dissenting). I cannot agree to the foregoing opinion, for reasons that I will state. The questions involved in this decision are of very great importance to the people of this state, as well as to the insurance companies. By Laws 1889, ch. 217, the legislature, under the guise of reform, enacted a most extraordinary law. It provides that the Insurance Commissioner, within sixty days after the passage of that act, shall prepare and file in his office "a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements or conditions as may be endorsed thereon or added thereto and form a part of such contract or policy, and such form when so filed shall be known and designated as the Minnesota standard policy." It further provides that he shall call upon the Attorney General for such assistance as to him may seem

necessary in the preparation of the policy.    It further provides that all fire insurance contracts made after June 1, 1890, shall conform in all particulars as to provisions, agreements, and conditions to this printed form.

It further provides that printed or written forms of description, "or any other matter necessary to clearly express all the facts and conditions of insurance on any particular risk (which facts or conditions shall in no case be inconsistent with, or a waiver of any of the provisions or conditions of the standard policy herein provided for), may be written upon or attached or appended to any policy issued on property in this state."

If these provisions mean anything, they mean that every condition in such standard form which will allow the insurance company to escape liability must be inserted in every insurance policy issued, and, when so inserted, it cannot be waived by any power on earth, but absolutely protects insurance companies in taking advantage of every technical violation for the purpose of evading payment of losses, and under no circumstances can the company waive or forgive any such technical violation.

Within sixty days after the passage of this act the insurance commissioner did prepare and file the Minnesota standard policy, which contains at least thirty five conditions, the violation of any one of which will forfeit the policy.

Any one familiar with insurance law can readily understand that one such forfeiture clause, protected from the doctrine of waiver as heretofore applied by the courts, will render void more policies than a dozen such clauses to which such doctrine of waiver is applied; and, if this statute and standard policy is the law of this state, then not one insurance loss in ten which the insurer sees fit to refuse to pay can be collected.

By the law of waiver, the party to a contract who would enforce an act of forfeiture committed by the other party must do no act recognizing the contract as still in force after he learns of the forfeiture.    If he does, he waives the forfeiture.    This rule applies as well to forfeiture clauses in leases, deeds, and other contracts as it does to those in insurance policies.

If this statute is constitutional, the decision of the majority is right.    But it seems to me that the constitutionality of this statute

is very questionable.    Is it not an attempt to delegate legislative power to the insurance commissioner?    If the legislature can thus delegate to an individual the power to prescribe what provisions shall, and what provisions shall not, be inserted in an insurance contract, why can they not in the same manner delegate the power to prescribe what provisions shall, and what provisions shall not, be inserted in a deed or a mortgage or a promissory note?    Why can they not designate some one as the czar of the law of contracts, and delegate to him complete and absolute power to say what the law of any and all contracts shall be?

It is true that the question of the constitutionality of this legislation has not been raised by either party to this appeal; but it seems to me that, on account of the great public importance of the question, this court should not dispose of the case in a way that, to a considerable extent, implies that it considers the legislation constitutional, but should, when the question is suggested, raise it of its own motion, and order a further argument of the case as to this question.    If such a course is unprecedented, it seems to me that it is time such a precedent was established.    For this reason, I cannot agree with the opinion of the majority.

COLLINS, J.    Because of its importance, I am of the opinion that it would be advisable to order a reargument of this case upon the question suggested by Mr. Justice CANTY, although I do not wish to be understood as concurring in all that he has said.    On the case as presented, I assent to the majority opinion.

(Opinion published 60 N. W. 1095.)

On December 4, 1894, a reargument of this case was ordered.    On such reargument the following opinion was filed, May 15, 1895:

CANTY, J.    This case was argued and decided in favor of appellant at the last term of this court.    It having been then suggested that Laws 1889, ch. 217, which provides for the preparation and adoption of the "Minnesota standard policy," was unconstitutional, for the reason that it attempted to delegate legislative powers to the Insurance Commissioner, a motion for reargument was made, on the ground of such unconstitutionality, the motion was granted, and the case has since been reargued.

Since the granting of the motion for reargument, the Supreme Court of Pennsylvania has declared a somewhat similar statute unconstitutional, as being an attempted delegation of legislative power. See *O'Neil* v. *Insurance Co.*, 166 Pa. St. 72. It is now conceded by appellant that, if the Minnesota statute is the same as that of Pennsylvania, it would be unconstitutional. But, while the statute of Pennsylvania attempted to give the Insurance Commissioner power to adopt, as the standard policy, any form of insurance contract he saw fit, it is claimed that the Minnesota statute requires the insurance commissioner to adopt the New York standard policy, and gives him no discretion, as to the substance of the contract to be so adopted, and that, therefore, there was no such attempt to delegate legislative power to him. So far as it is necessary here to consider Laws 1889, ch. 217, it reads as follows:

"Section 1. The Insurance Commissioner shall prepare and file in his office on or before the first (1st) day of August, A. D. eighteen hundred and eighty-nine (1889), a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements or conditions as may be endorsed thereon, or added thereto, and form a part of such contract or policy, and such form when so filed shall be known and designated as the Minnesota Standard Policy. Said Insurance Commissioner shall within sixty (60) days from the passage of this act prepare, approve and adopt a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements and conditions as may be endorsed thereon or added thereto and form a part of such contract or policy, and such form shall, as near as the same can be made applicable, conform to the type and form of the New York Standard Fire Insurance Policy, so called and known. Provided, however, that five (5) days' notice of cancellation by the company shall be given, and provided, that proof of loss shall be made within sixty (60) days after a fire.

"Sec. 2. The Insurance Commissioner may call upon the Attorney General for such assistance as to him may seem necessary in the preparation of the aforesaid standard insurance policy, and it is hereby made the duty of said Attorney General to perform such service."

"Sec. 4. On and after the first (1st) day of January A. D. eighteen hundred and ninety (1890), no fire insurance company, corporation or association, their officers or agents, shall make, issue, use or deliver for use any fire insurance policy or renewal of any fire policy on property in this state, other than such as shall conform in all particulars as to blanks, size of type, context, provisions, agreements and conditions with the printed form of contract or policy so filed in the office of the insurance commissioner, as provided for in the first (1st) section of this act, and no other or different provision, agreement, condition or clause shall in any manner be made a part of said contract or policy, or be endorsed thereon or delivered therewith, except as follows, to-wit:    *    *    *"

Then follow provisions which authorize the insertion in the insurance policy of matters of description, and other particulars and provisions peculiar to the particular insurance company or the particular risk, and not inconsistent with the provisions or conditions of the standard policy. It is contended, in substance, that all of this statute above quoted which provides for the preparation and adoption of a standard form is surplusage, except the part of Laws 1889, ch. 217, § 1, which provides that "such form shall, as near as the same can be made applicable, conform to the type and form of New York Standard Fire Insurance Policy so called and known."

If this contention is correct, why were the provisions inserted, which immediately follow this, and require five days' notice of cancellation by the company, and provide for sixty days in which to make proof of loss? It is conceded by counsel for appellant that these identical provisions were in the New York standard form when this act was passed. If the legislature intended to require all of the provisions of that form to be adopted, why did they thus specify only those two?

Again, if the Insurance Commissioner had no discretion, and was to act merely as a copyist of the New York form, why was it deemed necessary to provide for him the assistance of the Attorney General, in his onerous duties of copying the same? Again, why should the words "provisions, agreements, and [or] conditions" occur so often in the statute where they are of no particular importance, and be left out in the very connection and very place where they would be all-important? Again, the statute provides that "such

form shall, as near as the same can be made applicable, conform to the type and form of the New York 'standard.'"

It is insisted that this authorizes only such changes as striking out the words "New York," and inserting "Minnesota," and that for the purpose of permitting such changes the words, "as near as the same can be made applicable," were used. There are no such changes to be made. The words "New York" do not occur in the provisions of the New York standard. There is not a word in the provisions of the New York form which it is necessary to change in order to apply the form to Minnesota. Then the legislature must, at least, have intended to give the Insurance Commissioner power to exercise his judgment in determining which of the provisions of the New York form were applicable to Minnesota, and which were not, and this would be an unconstitutional delegation of power. Conceding, without deciding, that this would be a proper way to make the New York form a part of the Minnesota statute, if the legislature intended to adopt the New York form, they could have said so in a very few words.

The words "type and form," above quoted, are written together in the same connection, and it is fair to presume that they both refer to matters of the same general kind; that is, to matters of form. Construing these words in connection with the other provisions of the statute, we are of the opinion that they are equivalent to "type and style," that the legislature intended to give the Insurance Commissioner power to insert in the standard form such provisions as he saw fit, and that, while it might be materially different from the New York form in substance, it should conform to it, as far as practicable, in the size and character of the type, and in the arrangement of provisions. The object of this was obviously to prevent the use of type so small and obscure, and the arrangement of provisions so misleading, that an ordinary man would not read these provisions, and, if he did, could not understand them.

Then the legislature attempted to clothe the Insurance Commissioner with power to enact a general law, prescribing what provisions and conditions should be inserted in a policy of insurance, and what should not. There was no reason why the legislature could not pass this act as well as the commissioner. There may be

necessity for police regulation in the insurance business, for the protection of the insured and the insurer; and the regulation of many matters of detail, exceptional matters, and matters which cannot well be regulated by the general provisions of law, may perhaps be delegated to such a commissioner. But this is not such a matter. There is no necessity for changing from time to time, between legislative sessions, the provisions which should be put in such a standard form, so as to meet changing conditions. See *State* v. *Chicago M. & St. P. Ry. Co.,* 38 Minn. 301, (37 N. W. 782,) and no such power was given to the Commissioner. He was to prepare and adopt a standard form, once for all, and, when so adopted, it was to remain irrevocable until changed by subsequent legislation. A clearer instance of an attempt to delegate legislative power could hardly be suggested.

As said in *State* v. *Young,* 29 Minn. 551, (9 N. W. 737:) "It is a principle not questioned, that, except where authorized by the constitution, as in respect to municipalities, the legislature cannot delegate legislative power; cannot confer on any body or person the power to determine what shall be law. The legislature only must determine this." We are of the opinion that Laws 1889, ch. 217, is unconstitutional and void, and therefore the provision of said statute prohibiting the parties from waiving any of the provisions of the standard policy has no effect, and does not prevent a parol waiver of the condition in the policy declaring such policy "void if the insured now has, or shall hereafter make or procure, any other contract of insurance." This being so, the contract of insurance is merely the voluntary contract of the parties, not restricted by any such statute; and by delivering the policy here in question, knowing of the existence of other insurance on the property, the defendant waived this condition of its policy, and plaintiff is entitled to recover. *Brandup* v. *St. Paul F. & M. Ins. Co.,* 27 Minn. 393, (7 N. W. 735;) *First Nat. Bank* v. *American Cent. Ins. Co.,* 58 Minn. 492, (60 N. W. 345;) *Lamberton* v. *Connecticut Fire Ins. Co.,* 39 Minn. 129, (39 N. W. 76.)

This disposes of all the questions in the case, and the order appealed from is affirmed.

(Opinion published 64 N. W. 241.)