L. KELLS, Assignee, v. NORTHWESTERN LIVE-STOCK INSURANCE COMPANY.[1]

May 13, 1896.

Nos. 9834—(23).

**Live-Stock Insurance—Breach of Warranty of Ownership.**

The vendee of a horse purchased on credit for $1,000 gave his notes to the vendor for that sum, secured them by a chattel mortgage on the horse, and insured the horse in the defendant company against loss by death, in the sum of $500; loss, if any, payable to the vendor as his interest might appear. The contract of purchase contained a provision that, if the horse should die within a certain time thereafter, the vendor "is to take the insurance, which is $500, and give up the notes." *Held*, this provision is not a breach of the clause in the policy of insurance which warrants that the vendee "is the sole, absolute, and unconditional owner" of the horse.

**Same—Notice of Sickness.**

The policy provided that in case of sickness the owner shall, in every case, notify the insurer thereof, at its home office, by telegram. *Held*, this did not require the owner immediately so to notify the insurer of a sickness which lasted only ten minutes or less, and did not recur again at least for seven weeks.

**Promissory Note—Possession.**

Possession by the payee of a negotiable promissory note indorsed specially by him to a third party is prima facie evidence that such payee is the owner of the note.

[1] Reported in 67 N. W. 215; 71 N. W. 5.

Appeal by defendant from an order of the district court for Stearns county, Baxter, J., denying a motion for a new trial. Affirmed.

*Edward B. Graves*, for appellant.

*George W. Stewart*, for respondent.

CANTY, J. On February 25, 1893, N. P. Clarke was the owner of a stallion, which on that day he sold to one Franzikus for $1,000, for which Franzikus gave his notes secured by a chattel mortgage on the horse. On March 14, 1893, defendant insured Franzikus for one year against loss by death of the horse by disease or accident, to the amount of $500; loss, if any, payable to Clarke "as his interest may appear as mortgagee." On January 4, 1894, during the time covered by the policy, the horse died. This action was brought by Clarke to recover on the policy. He subsequently made an assignment for the benefit of his creditors, and his assignee, Kells, was substituted as plaintiff. A jury was waived, and the court found plaintiff was entitled to judgment for $500 and interest. From an order denying its motion for a new trial, defendant appeals.

1. The bill of sale of the horse from Clarke to Franzikus contains the following provision: "If the said horse should die before July 1, 1895, the said N. P. Clarke is to take the insurance, which is $500, and give up the notes. The horse is to be kept insured in N. P. Clarke's favor for $500." It is urged by appellant that these facts constitute a breach of the warranty in the insurance policy, which warrants that Franzikus is "the sole, absolute, and unconditional owner of the live stock insured." We do not see that the above-quoted provision in the bill of sale caused Franzikus to be any the less the sole and absolute owner of the horse than he would be if that provision had never existed. The provision simply gave him an additional indemnity against loss in case of the death of the horse. Neither can we see that, as claimed by appellant, this provision made the policy of insurance a wagering contract, or deprived Franzikus of an insurable interest.

2. But, even if the existence of the provision was a breach of this or some other condition in the policy, there is evidence that the breach was waived, as the evidence tends to prove that, at the time the policy was issued, defendant's agent, Seaton, had knowledge of this provision in the contract of sale, and made no

objection to it.   See Anderson v. Manchester Fire Assur. Co., 59 Minn. 182, 60 N. W. 1095, and 63 N. W. 241; Brandup v. St. Paul F. & M. Ins. Co., 27 Minn. 393, 7 N. W. 735.

3. The insurance policy contains this condition:

"Fourth. That the said insured has agreed and is required to use all due diligence, precaution, and care in the use, and for the safety, health, and preservation, of said live stock, and, in case of sickness or accident, agrees to promptly summon to his aid the best veterinary surgeon to be had in the vicinity, or, if none can be had, to otherwise provide the best available care and attention; and he shall in every case at once notify this company, at its home office, in Des Moines, Iowa, by telegram, of the fact of such sickness or accident, otherwise this policy shall be void."

The horse was more or less sick on November 15, 1893, some seven weeks before he died.   Appellant was not notified of this sickness, and claims that the failure to notify it avoided the policy.   We cannot hold that a failure to notify the insurer of any sickness, however slight and temporary, especially when it passes away quickly and does not recur again, is sufficient to avoid the policy.

The evidence as to how sick the horse appeared to be on that occasion is conflicting.   The witness Franzikus testified as follows: "My boy got up in the morning, went out to the stable, like he usually does, came back, and said, 'Pa, Van Guard looks like being sick.'   Then I went to the stables, and saw the horse acted sick; and I went to Dr. Cooley, and got him there as quick as I could.   When he came there, I guess Mr. Connelly was there, and they wanted to pull the horse out of the stable; and they led the horse to the door, and by going out of the stable, when he stepped over there,—there was a manure pile,—and when he stepped over there he kind of laid down; and Dr. Cooley took out his knife and bled the horse, and as soon as he bled him the horse got right up again; and I took him into a long stable, 24 by 15, and put him in there, and covered him up nicely, and in ten minutes I tried him to eat, and he did eat.   Q. Did you ever notice anything wrong with the horse after that, till he died?   A. No, sir; he ate regular, and I put him in the yard like the other horse, as usual, with the mare and colt.   *   *   *   He trembled a little when he was sick, but afterwards nobody saw anything about it."   The witness repeatedly testified that the horse was sick at this time only a few minutes, or not longer than 10 minutes.

The trial court was justified in finding from this evidence that the sickness was very slight, and of very short duration. But the court has failed to find on the question at all. It is true that the court found that the horse "was sick, with the sickness which caused its death, for three or four days before it died." Appellant's counsel contends that by this finding "the court can refer to nothing else but the sickness in November, because there is no testimony as to any other sickness." We cannot so hold. It is true that there is no evidence that the horse was attacked by sickness from the time he was sick in November until one hour before he died, but we cannot, as counsel contends, vary the meaning of the findings by a reference to the evidence. Counsel does not predicate anything on the failure to give notice of any sickness commencing immediately or shortly before the death of the horse. He simply insists that the finding refers to the November sickness, and that there was a failure to give notice of the November sickness.

There is nothing in the point that it does not appear that Franzikus was the owner of the horse at the time of the death, or that the horse died in this state, or the point that it is not to be presumed that Clarke was the owner of the notes.

4. The notes were produced at the trial, and offered in evidence by plaintiff, and at that time were indorsed as follows: "Pay Clarke & McClure, or order. [Signed] N. P. Clarke." Appellant cites Welch v. Lindo, 7 Cranch, 159, to the effect that it must be presumed that Clarke & McClure are still the owners of the notes. In answer, we will say that that case seems to have been overruled by Dugan v. United States, 3 Wheat. 172, and the weight of authority holds that possession by the payee of a note indorsed specially by him to a third party is prima facie evidence that such payee is the owner of the note. See 1 Daniel, Neg. Inst. § 576, and cases cited.

This disposes of all the questions in the case worthy of consideration, and the order appealed from is affirmed.

## Upon Application for Reargument.

### May 27, 1896.

CANTY, J. The only point in appellant's petition for reargument, worthy of consideration, is that there is evidence in the case (other

than that quoted in the opinion,) tending to prove that the sickness of the horse in November was not slight but serious, and of much longer duration than the evidence quoted would seem to show. We did not, as counsel claims, overlook the testimony not quoted. Counsel seems to misapprehend the purpose for which we quoted the testimony above referred to. We quoted it for the purpose of showing that the evidence would sustain findings and a judgment for plaintiff. The court below did not find as to the November sickness at all. The evidence would sustain a finding either way, that it was slight or that it was serious, and if appellant desired to make any point in this court on that sickness, he should have requested further findings. Not having done so, the only point he could raise here was that the evidence would not sustain a decision and judgment for plaintiff at all, as to which we held against him.

The petition for a reargument is denied.