PHENIX INS. CO., OF BROOKLYN, N. Y., *et al.,* v. PERKINS,
Commissioner of Insurance.

1. Where an order refusing a temporary injunction itself discloses that no discretion was exercised, but that it was on the ground that plaintiff had no cause of action, the rule that such order cannot be reversed in the absence of abuse of discretion has no application.

2. Under Rev. Civ. Code, § 1276, providing that every stipulation in a contract which limits the time within which a party may enforce his rights thereunder is void, the provision in a policy of fire insurance that no suit shall be sustainable thereon, unless commenced within 12 months next after the fire, is void.

3. Rev. Civ. Code, § 664, providing that the State Insurance Commissioner shall keep on file in his office printed forms, in blank, of a contract or policy of fire insurance, and that the Commissioner shall, as near as the same can be applicable, conform to the type and form of the New York standard fire insurance policy, is repugnant, in so far as it delegates to the Commissioner power to prescribe the form of policy to be used, to Const. art. 3, § 17, requiring every bill to be read three times, that the lawmakers may know what they are doing, and hence he has no power to compel insurance companies to use any particular form of fire insurance policy.

4. Where the State Insurance Commissioner attempts to compel foreign fire insurance companies to use a particular form of fire insurance policy, which has not been enacted as a law of the state, such companies are entitled to raise the question of his authority in a suit to restrain the Commissioner from compelling them to use the form prepared by him.

(Opinion filed January 6, 1905.)

Appeal from circuit court,. Davison county; Hon. FRANK B. SMITH, Judge.

Suit by the Phenix Insurance Company of Brooklyn, N. Y., and others against John C. Perkins, Commissioner of Insurance. From an order refusing a temporary injunction, plaintiffs appeal. Reversed.

*Preston & Hannett (Bartlett Tripp,* of counsel), for appellants.

Under a constitution like ours which grants to the legislative department all legislative power, the commissioner of insurance could not be clothed with power either alone, or in conjunction with the attorney general, to prepare a policy of insurance, which without examination or ratification by the legislature itself, was to bind the company and individual citizens in their future contracts of insurance. Dowling et al. v. Lancanshire Insurance Co., 65 N. W. 738; Anderson v. Manchester Fire Association, 63 N. W. 241; O'Niel et al. v. American Fire Insurance Co., 30 Atl. Rep. 943.

The XlV amendment to the Constitution of the United States provides: "No state shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The word "person" as used in this section, includes corporations. Santa Clara County v. Southern Pacific R. R. Co., 118 U. S. 396; Pembina Mining Co. v. Penn., 125 U. S. 188-189; Smythe v. Ames, 169 U S. 466; The Railroad Cases, 13 Fed. 722.

*Philo Hall,* Atty. Gen., for respondent.

The right of a foreign corporation to engage in business within a state other than that of its creation depends wholly

upon the law of such other state.　Bank of Augusta v. Earle, 38 U. S., 13 Pet. 519; LaFayette Ins. Co. v. French, 59 U. S., 18 How. 404; Society for Savings v. Coite, 73 U. S., 6 Wall. 594 Provident Inst. for Savings v. Massachusetts, 73 U. S., 6 Wall. 611; Hamilton Mfg. Co. v. Massachusetts, 73 U. S., 6 Wall. 632; Paul v. Virginia, 75 U. S., 8 Wall. 168; Ducat v. Chicago, 77 U. S , 10 Wall 410; Philadelphia & R. R. Co. v. Pennsylvania ("State Tax on Railway Gross Receipts"), 82 U. S , 15 Wall. 284; Union Pac. R'y. Co. v Peniston, 85 U. S., 18 Wall. 5; Minot v. Philadelphia W. & B. R. Co., 85 U. S., 18 Wall. 206; Philadelphia & S. M. SS. Co. v. Pennsylvania, 122 U. S. 326, 1 Inters. Com. Rep. 30b; California v. Central Pac. R. Co., 127 U. S. 1, 2 Inters. Com. Rep. 153.

Where a foreign insurance company has been admitted into a state and has in the business it was authorized to carry on, acquired property or made contracts therein, such property and contracts are entitled to the equal protection of the laws, but the power and right of the state to preclude such corporation from entering includes the right to preclude them from continuing in business therein and also includes the right to impose conditions upon such continuance.

The state having the power to exclude entirely has the power to change the conditions of admission at any time in the future.　Fire Assn. of Philadelphia v. New York, 119 U. S. 110; Hartford Fire Ins. Co. v. Ransom, 38 N. W. 474; Doyle v. Continental Ins. Co., 94 U. S. 535.

A foreign insurance company does not acquire any vested rights by complying with the existing police regulations and comity laws which cannot be affected by subsequent changes in such regulations or laws.　State v. Fireman's Fund Ins.

Co., 45 L. R. A. 363; Connecticut L. Ins. Co. v. Spratley, 172 U. S. 602; Daggs v. Orient Ins. Co., 136 Mo. 382.

Legislation is not open to the charge of depriving one of his rights without due process of law if it be general in its operation upon the subjects to which it relates and is enforceable by using the modes adapted to the nature of the case. Dent v. W. Virginia, 129 U. S. 114.

The fourteenth amendment to the constitution of the United States, and the clause thereof providing that "No state shall deprive any person of life, liberty or property without due process of law," was not intended to, and does not, make any change in respect to the police power of the states. Slaughter House Cases, 16 Wall. 36; Powell v. Pennsylvania, 127 U. S. 676; M. & St. L. R. Co. v. Beckwith, 129 U. S. 26; Giozza v. Tierman, 148 U. S. 657; Hooper v. California, 155 U. S. 648; Holden v. Hardy, 169 U. S. 366.

Whenever the law operates alike on persons and property similarly situated, equal protection cannot be said to be denied. Walston v. Roach, 128 U. S. 578; Barbier v. Connoly 113 U. S. 27.

HANEY, J.   This action was instituted by certain foreign fire insurance corporations transacting business in this state to restrain the defendant, as Commissioner of Insurance, from making any change in the form of the standard policy.   The appeal is from an order refusing a temporary injunction.

The grounds assigned by the learned circuit court for its refusal to restrain the defendant during the litigation are:   (1) The amended complaint does not state facts sufficient to constitute a cause of action; and (2) the plaintiffs have no legal ca-

pacity to sue or to obtain the relief sought, because they are foreign corporations, and therefore incompetent to attack the validity of statutes regulating their business, or excluding or suspending them from transacting business in this state.   The well recognized rule that an order granting or refusing a temporary injunction cannot be reversed in the absence of an abuse of discretion has no application where, as in the case at bar, the order itself discloses that no discretion was exercised. Champion v. Board, 5 Dak. 416, 41 N. W. 739; Sandmeyer v. Ins. Co., 2 S. D. 346, 50 N. W. 353; Aultman & Taylor Co. v. Gunderson, 6 S. D. 226, 60 N. W. 859, 55 Am. St. Rep. 837; State v. Van Nice, 7 S. D. 104, 63 N. W. 537; Daley v. Forsythe, 9 S. D 34, 67 N. W. 948; LaCrosse Boot & Shoe Co. v. Mons Anderson Co., 13 S. D. 301, 83 N. W. 331.   Therefore it becomes necessary to determine whether, upon the well-pleaded allegations of the amended complaint, the plaintiffs are entitled to any relief whatever.

In 1893 the Legislature passed an act, the first section of which reads as follows:   "The State Auditor shall prepare and file in his office on or before the first day of August, 1893, a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements or conditions as may be endorsed thereon, or added thereto, and form a part of such contract or policy of fire insurance, and such forms when so filed shall be known and designated as the South Dakota standard policy.   The State Auditor shall, as near as the same can be made applicable, conform to the type and form of the New York standard fire insurance policy, so called and known. Provided, however, that five days' notice of cancellation by the company shall be given, and provided that proof of loss shall

be made within sixty days after a fire." Laws 1893, p. 174, c. 105, §·1. The act further provided that the Auditor might call to his aid the Attorney General, in preparing the proposed form of policy; that copies of the same should be mailed to companies doing business in the state; and that no fire insurance policy or renewal of any fire policy on property in this state, other than such as should conform in all particulars to the printed form on file in the Auditor's office, with certain specified exceptions not material in this connection, should be used after October 1, 1893. Id. §§ 2, 3, 4. Pursuant to this act, a form of policy was prepared and filed which has since been the only fire policy in use. In 1897 the office of Commissioner of Insurance was created, to whom the Auditor was directed to turn over all the records and files of his office relative to insurance matters, and thereafter the powers of the latter with respect to such matters ceased to exist. Laws 1897, p. 195, c. 69. The act providing for a standard form of policy was carried into the Revised Civil Code with no substantial change material to this controversy, except the omission of the provisions relative to the aid of the Attorney General, the mailing of copies, the date when the use of the prescribed form should begin, and the first section, which was made to read as follows: "The State Commissioner of Insurance shall keep on file in his office printed forms in blank of a contract or policy of fire insurance, together with such provisions, agreements or conditions as may be endorsed thereon, or added thereto, and form a part of of such contract or policy of fire insurance, and such forms shall be known and designated as the South Dakota standard policy. The Commissioner of Insurance shall, as near as the same can be applicable, conform to the type and

form of the New York standard fire insurance policy, so called and known. Provided, however, that five days' notice of cancellation by the company shall be given, and provided that proof of loss shall be made within sixty days after a fire." Rev. Civ. Code, §§ 664, 665, 666. The Revised Codes were enacted in 1903. At the same session, without alluding to the form of policy mentioned therein, the Legislature enacted what is known as the "Valued Policy Law," which contains these provisions:

"Section 1. Whenever any policy of insurance shall be written to insure any real property in this state including structures on land owned by another than the insured, against loss by fire, tornado or lightning, and that property insured shall be wholly destroyed without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages."

"Sec. 2. This act shall apply to all policies of insurance hereafter made or written upon real property including structures situated upon lands owned by another than the insured in this state, and also to the renewals which shall hereafter be made, of all policies heretofore written in this state, and the contracts made by such policies and renewals shall be construed to be contracts made under the laws of this state." Laws 1903, p. 187, c 162, secs. 1, 2.

The form of policy prepared by the auditor, and now on file in the commissioner's office, contains this language:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs,

19 S. D.—5

and the loss or damages shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described."

It is alleged that the Commissioner intends to so modify the form that the paragraph just quoted shall read as follows:

"*The amount of insurance written herein upon any real property in the state of South Dakota, including structures on land owned by another than the insured, shall be taken conclusively to be the true value of such property, and the amount of loss sustained by and the measure of damages of the insured; provided the same is wholly destroyed without criminal fault on the part of the insured, or his assigns.* This company shall not be liable beyond the actual cash value of the property at the time any loss or dam-

age occurs *except the class of property above mentioned*, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers, as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do, *except said class of property as to which the value, loss and damage is fixed,* but there can be no abandonment to this company of the property described."

The change consists in adding to the original the italicized words found in the proposed amendment. The form as prepared by the Auditor and now on file contains this clause:

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, *nor unless commenced within twelve months next after the fire.*"

It is alleged that the italicized words in this clause are to be omitted from the modified form. No other change is contemplated. Since long prior to the preparation of the form now in use, the Civil Code has contained the following provision: "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal procedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void." Rev. Civ. Code, § 1276; Comp. Laws, § 3582; Civ. Code 1877, § 958.

It needs no argument to demonstrate that the State Auditor could not be clothed with power to prepare and file a printed form of policy which would operate to abrogate or modify any existing statute. Vesey v. Assurance Co., 18 S. D. 632, 101 N. W. 1074. Nor does the act directing the preparation and use of the standard policy disclose an intention to confer such power. Hence the clause that limited the time in which actions might be commenced in policies issued prior to the revision of 1903 did not operate to amend the statute declaring such stipulations to be void. Did the enactment of the Revised Codes render such a stipulation valid? The section declaring all such agreements to be void and the section directing the Commissioner of Insurance to "keep on file in his office printed forms in blank of a contract or policy of fire insurance" are parts of the same Code, parts of the same act, adopted at the same time. If the legislature intended to incorporate the provisions of the standard policy into the statutes of the state, the two sections are conflicting, and, whereas "particular expressions qualify those which are general" (Rev. Civ. Code, § 2433), it might be necessary to hold that actions on fire polices issued since the

revision took effect must be commenced within 12 months after the fire. But assuming that our constitutional methods of enacting statutes would permit the Legislature to make the provisions of the standard policy a part of the law by merely referring to the form on file in the Commissioner's office, its purpose to do so was not expressed, and should not be inferred. Such a proceeding would be certainly unusual and contrary to the spirit of the Constitution, which requires every enactment to be twice read at length, that the lawmakers may be advised of what they are doing. State Const. art. 3, § 17. The languge of the form is not copied into the statute, as was done with respect to tax deeds and several other instruments. Nor does the revised statute declare that the printed form then on file shall be the policy used by all insurance companies. Its mandate is that the Commissioner shall keep on file in his office printed forms in blank of a contract or policy of fire insurance, which shall conform to the type and form of the New York standard fire insurance policy, so far as applicable, with certain specified exceptions. It does not direct the keeping on file of the form then in the Commissioner's office. It requires the constant custody of forms conformable to the New York standard, necessitating a modification with every change of that standard. No one will contend for a moment that a mere change in the standard form of another state could operate to modify the substantive law of this state. Moreover, if the Commissioner could neither abrogate nor modify existing statutes by filing a form of policy in his office, he could not do so by merely amending such form, and the conclusion cannot be escaped that the provision of the policy now on file requiring actions to be commenced within 12 months after the fire is

without force or effect, If this be so, it is wholly immaterial whether the limitation clause be in or out of the policies used in this state, and this phase of the controversy demands no further consideration.

If the only object of the other changes is to conform the the standard policy to the "Valued Policy Act," they are un; necessary, becuse the provisions of that act have been written by the law itself into every insurance contract to which they are applicable, executed since the act took effect. If the proposed changes consisted only in adding the words of the act to the form now on file, no one could be heard to object, because no one's rights would be affected. But in this instance the Commissioner intends to compel the use of a policy which defines the rights of the parties, not in the words of the statute or in words of their own selection, but in language framed by himself to express his own interpretation of the law. It will be observed that by the terms of the amended policy it is stipulated that the insurer shall not have the right to repair, rebuild, or replace property lost or damaged when such property is embraced within the provisions of the valued policy act. Whether this stipulation or any other on the subject of replacing lost or damaged property would conflict with the valued policy act might be a serious judicial question, and, if any latitude is allowed for such a stipulation, the effect of the contemplated changes would be to preclude the parties from contracting in relation thereto. It is here that the inherent inefficacy of an attempt to clothe any state officer with power to make or modify an exclusive form of policy becomes apparent. Conditions which the law requires to be in all fire insurance policies do not express the consent of interested parties. They

have the force and effect of law, and cannot be abrogated by agreement or rendered nugatory by waiver. The power to prescribe such conditions is legislative. It cannot be delegated. Attempts to establish standard policies by the method under discussion have been declared unconstitutional in Minnesota, Wisconsin, Pennsylvania, and perhaps other states. Anderson v. Assurance Co., 59 Minn. 182, 60 N. W. 1095; 63 N. W. 241, 28 L. R. A. 609, 50 Am. St. Rep. 400; Dowling v. Ins. Co , 92 Wis 63, 65 N. W. 738, 31 L. R. A. 112; O'Neil v. Ins. Co., (Pa.) 30 Atl. 943, 26 L. R. A. 715, 45 Am. St. Rep. 650. In each of the cases cited the legislation was declared unconstitutional, to protect the insured against forfeitures provided for in the policy; thus illustrating the frequent miscarriage of measures intended to protect plain people from the effects of injudicious contracts. In Anderson v. Assurance Co., supra, the constitutional question was suggested by the court in its first opinion, and decided on rehearing. On the assumption that the statute was constitutional, Mr. Justice CANTY, in his dissenting opinion, indulged in the following pertinent and forceful comments: "If these provisions mean anything, they mean that every condition in such standard form which will allow the insurance company to escape liability must be inserted in every insurance policy issued, and when so inserted, it cannot be waived by any power on earth, but absolutely protects insurance companies in taking advantage of every technical violation for the purpose of evading payment of losses, and under no circumstances can the company waive or forgive any such technical violation. Within sixty days after the passage of this act the insurance Commissioner did prepare and file the Minnesota standard policy, which contains at least

thirty-five conditions, the violation of any one of which will forfeit the policy. Any one familiar with insurance law can readily understand that one such forfeiture clause, protected from the doctrine of waiver as heretofore applied by the courts, will render void more policies than a dozen such clauses to which such doctrine of waiver is applied, and, if this statute and standard policy is the law of this state, then not one insurance loss in ten which the insurer sees fit to refuse to pay can be collected." The defendant is therefore without authority to compel the use of the standard policy, with or without his proposed amendments, not because its provisions conflict with any principle of constitutional law, but because its enforced use would establish rules of property and of conduct not prescribed by the sovereign power whose will is expressed by the Constitution, the enactments of the Legislature, and ordinances of other and subordinate legislative bodies. Rev. Civ. Codes, §§ 2, 3.

But it is contended that, though the enactments providing for the standard policy may be unconstitutional, the defendant cannot be restrained from enforcing its exclusive use, because the plaintiffs, being foreign corporations, are not entitled to attack the validity of any legislative act of this state. This contention is said to rest on the well-established principle "that the right of an insurance corporation to engage in business within a state other than that of its creation depends wholly upon the law of such other state." Conceding the correctness of this principle in its broadest terms does it warrant the conclusion contended for by the learned Attorney General? The real question presented by this appeal is not whether the state Legislature has power to prescribe an exclu-

sive form of policy, but whether it has done so. It has conferred the right upon the plaintiffs to engage in business within the state upon certain conditions, and subject to certain regulations. What are those conditions and regulations? Manifestly, such and only such as have been prescribed by the lawmaking owner. To the extent that any attempted legislation is unconstitutional, it is void. It is not law. It is as though the legislature had not acted. Therefore the law of this state does not require the exclusive use of the standard policy, or authorize the defendant to compel its use. It is the sovereign will, as we construe our Constitution and statutes, that foreign corporations shall have the right to transact business in this state, and that the parties to a contract of fire insurance shall have the right to use such form of policy as they may deem proper. It may be true that no foreign fire insurance company has a vested right to enter the state, or to continue transacting business therein; that, after such a corporation has entered the state, new burdens may be imposed, or it may be excluded altogether, but the new burdens must be imposed and the exclusion effected by the sovereign will. New burdens cannot be imposed or exclusions effected by the unauthorized acts of any state officer or private person. This must be so; otherwise any state officer or private person may abrogate the laws of the state at pleasure. The statement that corporations created by the law of one state cannot be heard to say that the enactments of another state, which interfere with or prevent the continuance of their business in such other state, upon terms previously prescribed, are unconstitutional, may lead to a correct determination of their rights in the case in which it is asserted but the statement itself is inaccurate and misleading. The

real reason for sustaining such enactments when thus attacked is that they are valid as to foreign corporations, because such corporations have no constitutional right to continue business in the state. Therefore the absolute power of the state to impose such conditions, as it may deem proper, is not in the slightest degree impaired by permitting such corporations to invoke the aid of the courts for the protection and enforcement of such rights as are conferred upon them by valid statutes. To illustrate: The plaintiffs may not successfully contend that the valued policy act is void for the reason that it impairs their right to transact business according to the law in force when they entered the state, or when their permits were issued; but why should they not be allowed to show, if such be the truth, that the act was never passed; that it has been repealed; that, because of defects in its title, or for any other reason, it does not express the sovereign will? The rule that courts will not enjoin the threatened action of a public officer which is within the scope of his authority or the limits of his discretion has no application, because, as has been shown, the defendant is without authority to compel the use of any form of policy. Should he attempt to do so, he would be acting as an individual, and not as an instrument of the law. Were the State Treasurer to prepare a form of policy, and demand its exclusive use by the plaintiffs, would any one contend that they could be excluded from the state for failing to comply with the demand? Suppose some person occupying the office of Insurance Commissioner should assign as his only reason for revoking the license of a foreign corporation its refusal when requested to contribute $500 to the campaign fund of his political party; would the corporation be without remedy or redress?

Certainly not. The revocation would be invalid, because not authorized by the law. Were such revocation threatened, execution of the threat would be prevented by injunction for the same reason. While totally different in its moral aspects, there is no legal distinction between the supposed case and the one at bar. Each presents only a question of authority which should be determined without reference to the moral quality of the conduct involved. So, conceding that plaintiffs' rights depend wholly upon the law of this state, defendant's threatened efforts to compel the exclusive use of the amended standard policy, though prompted by the best of motives, should be restrained, for the very obvious reason that the law upon which such rights depend authorizes the plaintiffs to transact business in this state, and to use such forms of policy as may be consented to by their patrons.

The order appealed from is reversed.